S04A0100. HANNAH v. THE STATE.
(599 SE2d 177)

HINES, Justice.

Michael R. Hannah appeals from his conviction of the malice murder of Dyonne Rice.[1] For the reasons that follow, we affirm.

Construed to support the verdict, the evidence showed that Hannah and Rice had an intermittent romantic relationship. On the morning of Wednesday, December 13, 2000, Hannah telephoned for an ambulance, stating that he thought Rice had taken a drug overdose. When the first responder arrived at Hannah's house, Rice's skin was blue and cold to the touch. She was not breathing.

Rice's face was severely bruised; bruises were on her lips, under her chin, and around both eyes. A deep injury to her left jaw muscle indicated a significant blow. She was bruised on her left upper arm and under her scalp; there were no significant injuries on her lower body. Her bruises occurred within the three days before her death; the injuries were not consistent with tripping and falling. On Sunday, December 10, 2000, before going to Hannah's house, Rice did not have any bruises on her face.

---

[1] Rice died on December 13, 2000. On February 21, 2001, a Hart County grand jury indicted Hannah for malice murder and felony murder while in the commission of aggravated assault. Hannah was tried before a jury October 1-3, 2002, and was found guilty on both charges. On October 4, 2002, Hannah was sentenced to life in prison for malice murder; the felony murder charge was vacated by operation of law. See *Malcolm v. State,* 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). Hannah moved for a new trial on October 18, 2002, and amended the motion on March 14, 2003; the motion was denied on August 14, 2003. Hannah filed a notice of appeal on September 11, 2003. His appeal was docketed in this Court on September 19, 2003, and orally argued on January 20, 2004.

On Wednesday morning, December 13, 2000, Hannah told investigators that Rice had fallen over a clothes basket on Sunday night and he had put her to bed. Blood matching Rice's was found in the carpet. Two days later, Hannah told investigators that Rice had stayed with him for two days; on Tuesday morning, she fell; he dropped her trying to help her up; he dragged her to bed; she was not communicative; while in bed, she urinated and vomited; he called an employee to come to his house and get the keys to open his bar, but did not say that Rice was there; he found some pills and thought she had taken an overdose; and he did not want her to be jailed, so he did not call an ambulance. When told that the medical examiner concluded that Rice had died of blunt force trauma to the head, Hannah said that: they had an argument; she screamed at him; he thought she was going to steal from him; he hit her once or twice, or perhaps more, with his open hand; she fell as a result of the blows; and she had fallen earlier in the day as he had previously described.

On Tuesday, December 12, 2000, Rice's daughter telephoned for Rice at 7:45 in the morning about taking Rice to a dentist appointment at noon. Hannah said that Rice was sleeping and he would have her telephone her daughter when she awoke. At 8:00 that evening, when the daughter called again, Hannah said that Rice was still sleeping.

On Wednesday, December 13, 2000, Hannah told Rice's sister that Rice had committed suicide. Later that same day, he said that the death may have been accidental, and even later that day, he stated to her that Rice had fallen and hit her head "the other night"; he never again mentioned suicide to her.

At trial, Hannah testified that: on Tuesday morning, Rice "came flying" at him, flailing him with "a shoe or something"; he hit her with his open hand three or four times in an attempt to "get her off of [him]"; she then went into a bedroom; she then went outside and smoked, returned to the bedroom, and began packing her clothes; two hours after he struck her, Hannah found Rice on the floor of another room; she said: "everything is spinning"; he tried to lift her off the floor, dropped her, then dragged her to her bedroom; he dropped her twice more attempting to get her into bed, which he finally did; he later found that she had urinated on herself, and he cleaned her; he found a bag containing three prescription bottles with some pills in them and, based on past experiences with Rice, concluded that she had taken some pills and that it would be a considerable time before she woke; he did not call an ambulance because he feared it would result in her getting in trouble for not paying child support; he checked on her Wednesday morning and she began vomiting; he gave her artificial respiration and telephoned for an ambulance.

1. Hannah contends that the State presented only circumstantial evidence that did not exclude all reasonable hypotheses except his guilt. See OCGA § 24-4-6.

[Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. [Cit.]

*Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998). The evidence was sufficient to enable a rational trier of fact to find Hannah guilty beyond a reasonable doubt of malice murder. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hannah contends that the trial court should have instructed the jury on the affirmative defense of accident, asserting that striking her in the manner he admitted was not likely to produce the injuries suffered. For a jury charge on accident to have been warranted, there must have been evidence that Hannah's act showed an absence of a criminal scheme, undertaking, intention, or criminal negligence. See OCGA § 16-2-2; *Davis v. State*, 269 Ga. 276, 279-280 (3) (496 SE2d 699) (1998). But, there was no evidence to support the conclusion that Hannah's act of striking Rice was an accident; rather, he testified he did so in self-defense "to get her off of me," and the jury was instructed on the law pertaining to self-defense. Thus, Hannah either committed no crime at all, or committed an act with at least criminal disregard for Rice's welfare. See *Davis*, supra; *Willis v. State*, 258 Ga. 477 (1) (371 SE2d 376) (1988). Further, the jury was fully charged on the State's burden to prove every element of the crime of murder, including intent. As the jury believed Hannah to be guilty of malice murder, it could not have believed Rice's death to be the result of an act committed in the absence of criminal intent. *Tankersley v. State*, 261 Ga. 318, 322 (7) (404 SE2d 564) (1991). Evidence that Rice tripped and fell does not go to the affirmative defense of accident concerning any act of Hannah's, but rather to the factual question of whether any such fall caused Rice's death.

3. Hannah complains of the State's failure to produce a bag containing pill bottles, which he produced for the emergency medical technicians who responded to his house on Wednesday, December 13, 2000.

In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must

determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. *Walker v. State*, 264 Ga. 676 (3) (449 SE2d 845) (1994). See also *Arizona v. Youngblood*, 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988). To be material, the evidence must have had an apparent exculpatory value before it was lost, and be of such a nature that the defendant cannot obtain comparable evidence by other reasonable means. *Walker v. State*, supra.

*Brannan v. State*, 275 Ga. 70, 74 (2) (c) (561 SE2d 414) (2002).

There is no evidence of bad faith in the State's failure to produce the bottles of pills. In any event, the medical examiner testified about the drugs found in Rice's body, and other testimony established the existence of the pill bottles Hannah produced. Thus, as the actual pills would have been simply cumulative of other evidence, there was no violation of Hannah's due process rights. *Young v. State*, 243 Ga. 546, 549 (3) (255 SE2d 20) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 12, 2004.

*Gordon & Brown, Gerald W. Brown,* for appellant.

*Robert W. Lavender, District Attorney, Thurbert E. Baker, Attorney General, Frank M. Gaither, Jr., Assistant Attorney General,* for appellee.