## A07A0902. DOYAL v. THE STATE.
(653 SE2d 52)

SMITH, Presiding Judge.

Candi Doyal appeals from her convictions for possession of methamphetamine and possession of drug related objects. She contends, in part, that insufficient evidence supports her convictions and that the trial court erred by admitting hearsay evidence over her objections and by denying her motion for mistrial. Although we find that sufficient evidence supports Doyal's convictions, we reverse because she was entitled to a mistrial after the State introduced hearsay evidence that she had been selling methamphetamine.

1. On appeal from her criminal convictions, Doyal no longer enjoys a presumption of innocence, and we construe the evidence in the light most favorable to the jury's verdict. See *Gallimore v. State*, 264 Ga. App. 629 (591 SE2d 485) (2003). We do not weigh the evidence or resolve issues of witness credibility. Id. We "only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense[s] beyond a reasonable doubt." (Citation omitted.) Id.

---

So viewed, the record shows that two police officers went to Doyal's place of employment, a gas station and convenience store. One of the officer's testified, over objection, that when he went to the convenience store he told Doyal, "[t]he reason we're here is because I've got allegations against you for selling methamphetamine,"[1] and then asked her whether she was "*selling drugs out of the store.*" According to the police officer, Doyal replied that she was not selling drugs and that she was only an occasional user. When the officer asked her if she had any drugs, Doyal told him that she had a pipe in her purse and then, according to the officer, voluntarily pulled a glass pipe from her purse. The State introduced evidence showing that the glass pipe contained methamphetamine residue.

The officer testified that while the other officer "*continued* to search her purse" (emphasis supplied),[2] he asked Doyal if she had any identification and read the *Miranda* warnings to her as he had decided to arrest her. Doyal obtained her identification from a brown wallet that was located in her purse. Both officers acknowledged that one of them was holding Doyal's purse when she pulled the pipe out of it. After Doyal produced the pipe, the officer holding her purse searched it and found a red coin purse in which he placed the pipe to safeguard it from breaking. The officer could not recall whether Doyal pulled the pipe out of the red coin purse, but acknowledged that it was "quite possible." The officer testified that he also found a syringe, a spoon, rolling paper, and a straw inside Doyal's purse, *not* the red change purse. The State presented evidence that some of these items were consistent with drug use.

One of the arresting officers disposed of the syringe in a bucket designed to prevent a needle from accidentally pricking a person. A representative of the police department testified that, for safety reasons, the Dalton Police Department and the Georgia Bureau of Investigation Crime Lab had a policy against accepting or testing needles.

Doyal, as well as other convenience store employees, testified that her purse was used as a "community purse" for personal items belonging to other employees, as well as lost and found items, because the store manager did not like the counter to be cluttered. Doyal testified that the red change purse did not belong to her and that she had placed it in her purse after finding it earlier during her shift. When the officers came in, they asked if they could search the store,

---

[1] The officer also testified over objection that "[w]e've got complaints or information that you're selling methamphetamine" and "[w]e went into the store. We mentioned to her about the allegations we had received about –."

[2] We note that this testimony contradicts the officer's previous testimony that Doyal pulled the pipe from the purse.

and she agreed. One of the officers went behind the counter and started searching her purse. According to Doyal, she was not allowed to reach into the purse, and the officers asked her to keep her hands where they could see them. According to Doyal, the officer took the red change purse out of her purse and found the glass pipe, spoon, straw, syringe, and rolling papers inside it. Doyal admitted that she told the officers that the pipe was hers, but claimed that she did so only after the officers repeatedly pressured her to do so with the promise that they would not arrest her because they were looking only for the people who deal, not users. At trial, she denied that any of the items belonged to her.

We find this evidence sufficient to support Doyal's convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). "The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence." (Citation omitted.) *Strong v. State*, 265 Ga. App. 257, 258 (593 SE2d 719) (2004).

2. Doyal contends the trial court erred by admitting the officer's testimony that he told the defendant he had complaints that she was selling methamphetamine. We agree. This evidence improperly placed her character into evidence and was not relevant to explain the officer's conduct. *Britton v. State*, 257 Ga. App. 441, 442-443 (1) (571 SE2d 451) (2002).

The State's argument that the officer's testimony was not inadmissible hearsay because he was merely repeating what he had already said to Doyal overlooks the fact that the statement contained inadmissible hearsay within it to the effect that others had told the officer that Doyal was selling methamphetamine. *Britton*, supra, 257 Ga. App. at 442-443 (1). See also *Moore v. State*, 281 Ga. App. 141, 143-144 (2) (635 SE2d 408) (2006). Additionally, the fact that the officer made the statement in Doyal's presence was not relevant to any material issue in the case.

> It will be seen that only in rare instances will the "conduct" of an investigating officer need to be "explained," as in practically every case, the motive, intent, or state of mind of such an officer will not be "matters concerning which the truth must be found." At heart, a criminal prosecution is designed to find the truth of what a defendant did, and, on occasion, of why he did it. It is most unusual that a prosecution will properly concern itself with *why* an investigating officer did something. If the hearsay rule is to remain a part of our law, then OCGA § 24-3-2 must be contained within its proper limit. Otherwise, the repetition of the rote words "to

explain conduct" can become imprimatur for the admission of rumor, gossip, and speculation.

*Teague v. State*, 252 Ga. 534, 536 (1) (314 SE2d 910) (1984).

Having found error in the admission of the evidence, we must now consider whether it is highly probable that the error did not contribute to the judgment. *Teague*, supra, 252 Ga. at 537 (2). In this case, the hearsay was *not* cumulative of other evidence and was extremely prejudicial to Doyal. Because the evidence of Doyal's guilt was not overwhelming, we cannot say that it is highly probable that it did not contribute to the verdict and therefore must reverse her conviction. See *Britton*, supra, 257 Ga. App. at 443 (1).

3. Because other errors asserted by Doyal might arise again if the State retries her, we will address them. Doyal asserts that the trial court erred by denying her request to admit evidence that the manager of the convenience store had "grave suspicions" that another employee was using illegal drugs. She also asserts that the trial court should have admitted a certified copy of court documents showing that this other employee was charged with trafficking in methamphetamine one year before Doyal's arrest and that these charges were dismissed in March 2006 because the employee had been "under sentence for a federal drug conviction" and was "serving her sentence in federal prison." We find no merit in this argument. Defense counsel's proffer during trial included no evidence that this employee was working in the store around the time of Doyal's arrest, and the certified copy of the nolle prosequi shows that the employee was incarcerated one month before Doyal's arrest.

4. Doyal asserts that the trial court erred by refusing to allow her to present testimony from other witnesses that, based on their observations of Doyal, they had no reason to believe that she used drugs. Doyal argues that this evidence was admissible to rebut or impeach the police officers' testimony that she admitted to them that she used drugs. We agree, because "[a] witness may be impeached by disproving the facts testified to by him." OCGA § 24-9-82. See *State v. Byrd*, 255 Ga. 665, 666-667 (341 SE2d 455) (1986) (state permitted to introduce evidence that defendant sold drugs as rebuttal to defendant's testimony that he never sold drugs); *King v. State*, 203 Ga. App. 287, 289 (2) (416 SE2d 842) (1992) (same). In this case, Doyal sought to introduce the evidence to rebut the officers' testimony that she admitted using drugs, and the trial court should have allowed her to do so. Because we have already found harmful error in Division 2 of this opinion, we need not address whether the trial court's error here was harmful.

5. Doyal asserts that the trial court erred by granting the State's motion to exclude evidence that she had passed random drug tests

administered by her employers. The State argued that the evidence was improper good character evidence, that Doyal had failed to establish the chain of custody for and scientific reliability of the tests, and that Doyal had not produced the lab reports before trial. The trial court granted the State's motion without explanation and without providing Doyal an opportunity to prove the chain of custody for and the scientific reliability of the tests.

To the extent that the trial court excluded the tests on the grounds of relevance, it erred. For the reasons stated in Division 4, the test results were admissible to rebut the police officer's testimony that Doyal was an admitted drug user and *not* improper character evidence. See *Lockaby v. State*, 265 Ga. App. 527, 529-530 (2) (594 SE2d 729) (2004) (trial court did not err by allowing state to question defendant about any prior positive drug screens to impeach his unsolicited assertion that the drug screen that was the basis of his prosecution was his only positive drug screen); *King*, supra, 203 Ga. App. at 289 (2). Additionally, to the extent the trial court excluded the evidence on chain of custody or scientific reliability grounds, it erred by doing so without giving Doyal an opportunity to prove these prerequisites for admission.

6. Doyal contends her conviction must be reversed because the State destroyed evidence that she claims could have proven her innocence, specifically, the syringe and any fingerprints that may have existed on the glass pipe and spoon. This claim can be successful only if Doyal shows "that the evidence was material and that the police acted in bad faith in failing to preserve it." (Citations omitted.) *Shoemake v. State*, 266 Ga. App. 342, 343 (1) (596 SE2d 805) (2004). "The bad faith requirement avoids imposing on the police an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution." (Citation, punctuation and footnote omitted.) *State v. Blackwell*, 245 Ga. App. 135, 140 (2) (c) (537 SE2d 457) (2000).

In this case, there is no evidence that the police acted in bad faith. The record shows that the police department disposed of the syringe as part of their routine policy to prevent accidental pricks from needles that might be contaminated with infectious diseases. The officers did not take care to preserve fingerprints on the glass pipe because they saw Doyal handle it and therefore assumed that her fingerprints would be present. Finally, there was evidence that fingerprints are not routinely obtained from evidence in a drug case. As in *Swanson v. State*, 248 Ga. App. 551 (545 SE2d 713) (2001) (full concurrence in Division 1), Doyal has failed to show that evidence "was destroyed out of an interested or sinister motive, or through a conscious doing of wrong." Id. at 552 (1) (a). Because Doyal has failed to show bad faith, this enumeration of error has no merit.

7. We find no merit in Doyal's contention that the trial court should have given her requested charge on spoliation of evidence based upon OCGA § 24-4-22. This court and the Supreme Court have repeatedly held that such a charge is not appropriate in a criminal case. See, e.g., *Morgan v. State*, 267 Ga. 203, 205 (3), n. 2 (476 SE2d 747) (1996); *Williams v. State*, 239 Ga. App. 30, 33 (5) (521 SE2d 27) (1999).

8. In her remaining enumeration of error, Doyal claims that she was entitled to an equal access charge. "[A] charge on equal access is appropriate to counter a jury instruction on presumption of possession, and is not necessary otherwise." (Citations omitted.) *State v. Johnson*, 280 Ga. 511, 513 (630 SE2d 377) (2006). Since the trial court did not charge the jury on a presumption of possession, Doyal was not entitled to an equal access charge. Id.

*Judgment reversed. Barnes, C. J., and Miller, J., concur.*

DECIDED AUGUST 7, 2007 —
RECONSIDERATION DENIED SEPTEMBER 28, 2007.

*Wayne H. Basford, Michael R. McCarthy*, for appellant.
*Kermit N. McManus, District Attorney, Forest L. Miles, Assistant District Attorney*, for appellee.