A09A0578. THE STATE v. BRAWNER.
(678 SE2d 503)

MIKELL, Judge.

In this appeal, the state challenges the trial court's grant of Dwight Brawner's motion to dismiss an indictment, which alleged that Brawner committed the offenses of armed robbery, kidnapping, and hijacking a motor vehicle against victim Kelly Thompson on November 7, 2006. In his motion to dismiss, Brawner argued that his due process rights were violated because the state failed to preserve a surveillance videotape of the alleged incident and/or scene, which would have established that Brawner was not the perpetrator in the case. The state argues that the videotape was not material and that it did not act in bad faith when it failed to preserve it. We agree with the state and reverse the trial court's ruling.

The record shows that the incident occurred in the parking lot of a Publix grocery store between 4:25 p.m. and 5:00 p.m. on November 7, 2006. On the next day, Detective Robert Smith of the City of Atlanta Police Department went to Publix to view surveillance videotapes recorded between noon and 8:00 p.m. on the day of the incident. Smith had information that the incident occurred on the east side of the parking lot. Smith testified that the tapes showed the north parking lot and a part of the east parking lot but that he did not see the victim or the defendant on the tape. In fact, Smith stated that the tape showed nothing that was pertinent to the case. Therefore, he left the store without obtaining a copy of the tape.

At the hearing on the motion to dismiss, Smith produced a

videotape of the Publix parking lot but did not know if it was the same tape that he viewed at the store. When asked if it was his customary practice to obtain copies of surveillance tapes, he indicated that it was not his practice where the tape contained no evidence. Smith testified that he did not destroy the tape, but he admitted on cross-examination that he did nothing to preserve it. Smith also acknowledged that he had not included the fact that he viewed the videotape in the supplemental reports that he produced at the hearing.

Officer J. N. White testified that she responded to the incident at Publix on the day it occurred. White testified that she talked to the victim at the scene; that she spoke with Publix management to inquire about surveillance videotapes; and that she watched the videotape at the store with the victim, who explained what was happening on the tape. White further testified that she was unable to identify anyone in the videotape, but that with the victim's narration, she could determine that a robbery was occurring. According to White, the images on the tape were distorted, small, and distant.

White retrieved a copy of the videotape and turned it in to the criminal investigations division but could not remember to whom she gave the tape. As a course of her normal practice, however, she testified that she would have given it to the supervisor or placed it on the lead investigator's desk. She acknowledged that she would have had to log in the videotape had she turned it in to the property division. White testified that she never saw the tape again and had no reason to intentionally discard it. No other witnesses testified at the hearing.

"The [s]tate's duty to preserve evidence which may be exculpatory arises from the due process clause of the U. S. Constitution. A bad faith failure to preserve material evidence is a denial of due process."[1]

> In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. To be material, the evidence must have had an apparent exculpatory value before it was lost, and be of such

---

[1] *Fincher v. State*, 276 Ga. 480, 483 (5) (578 SE2d 102) (2003), citing *Arizona v. Youngblood*, 488 U. S. 51, 57-58 (109 SC 333, 102 LE2d 281) (1988). Accord *Williams v. State*, 277 Ga. App. 106, 108 (2), n. 8 (625 SE2d 509) (2005); *Shoemake v. State*, 266 Ga. App. 342, 343 (1) (596 SE2d 805) (2004).

a nature that the defendant cannot obtain comparable evidence by other reasonable means.[2]

In reaching its conclusion that the videotape was material, the trial court wrote the following in its order:

> Here, the surveillance videotape was clearly material to the above-captioned case. During the hearing, Officer J. N. White . . . testified, . . . that she observed the surveillance tape at the alleged crime scene. In this regard, Officer White testified that, although the surveillance videotape contained some distortion as well as small and distant images, the victim was able to narrate the alleged incident while observing it. Indeed, the surveillance videotape had an apparent exculpatory value.

We do not find that the evidence established that the videotape had "apparent exculpatory value."

The word "apparent" means "readily seen; visible; readily understood or perceived; evident; obvious."[3] There is no evidence in this case that anything on the videotape was readily seen, understood, evident, or obvious or that it had any exculpatory value. In fact, the evidence is to the contrary; i.e., the images were distorted, small, and distant. Smith testified that he could discern nothing pertinent to the case on the tape, and only with the victim's help could White observe that a robbery had indeed occurred. The officers were unable to identify either the victim or the defendant from the tape. Thus, we cannot agree with the trial court's conclusion that the videotape had an "apparent exculpatory value."

Even if we assumed, arguendo, that the evidence was material, we find no evidence in the record to support the trial court's finding that the police acted in bad faith. For purposes of the Due Process Clause,

> the presence or absence of bad faith by the police . . . must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. A finding of bad faith is reserved for those cases in which the police themselves by their conduct indicate

---

[2] (Citations and punctuation omitted.) *Brannan v. State*, 275 Ga. 70, 74 (2) (c) (561 SE2d 414) (2002).

[3] Webster's New World (College) Dictionary (3d. ed. 1994), p. 65.

that the evidence could form a basis for exonerating the defendant.[4]

Here, there is no evidence that the police had knowledge that the videotape had exculpatory value when it was lost. Instead, the evidence shows that the police officers could not identify anyone from the videotape.[5] The trial court concluded that the conduct of the officers, viewed in light of their testimony that the content of the tape was distorted, indicates that the tape could have had exculpatory value. The only facts in evidence regarding the officers' conduct were that Smith decided not to obtain a copy of the tape, and that White obtained a copy and then lost it. Georgia courts have required more than negligent or careless conduct to support a finding of bad faith.

In *Swanson v. State*,[6] we acknowledged that the state may have been negligent or careless in failing to preserve a blood sample.[7] However, no showing of bad faith was made where there was no evidence "that the sample was destroyed out of an interested or sinister motive, or through a conscious doing of wrong" or that the state "intentionally destroyed the evidence or had the evidence destroyed as a result of improper motive, such as keeping exculpatory evidence from the defendant."[8] In *Walker v. State*,[9] our Supreme Court agreed with the trial court's determination that the state's handling of the evidence may have indicated careless, shoddy and unprofessional investigatory procedures. However, the court concluded that there was no evidence that the police attempted in bad faith to deny the defendant access to evidence that they knew would be exculpatory.[10] In *State v. Blackwell*,[11] a case in which we affirmed the trial court's finding of bad faith, the state intentionally destroyed critical evidence, a urine sample, without notice to a defendant despite a court order.[12]

Based on these cases, the acts of obtaining and then losing the

---

[4] (Punctuation and footnotes omitted.) *State v. Blackwell*, 245 Ga. App. 135, 141 (2) (d) (537 SE2d 457) (2000) (whole court).

[5] See generally *Lynott v. State*, 198 Ga. App. 688, 690 (4) (402 SE2d 747) (1991) (no bad faith where an audio tape recording of officer's meeting with defendant was destroyed because it was unintelligible).

[6] 248 Ga. App. 551 (545 SE2d 713) (2001).

[7] Id. at 551-552 (1) (a).

[8] Id. at 552 (1) (a).

[9] 264 Ga. 676 (449 SE2d 845) (1994).

[10] Id. at 681 (3).

[11] Supra.

[12] Id. at 135, 141-142 (1) (d). There, the critical evidence was a urine sample that tested positive for amphetamine and methamphetamine and the court had issued an order allowing the defendant to conduct independent testing. Id. at 135.

YALE LAW LIBRARY

tape, alone, are insufficient to support a finding of bad faith. There was no evidence of intentional destruction of the videotape or that the officers intended to deprive Brawner of exculpatory evidence. Although on appeal we accept a trial court's determination as to whether the state acted in bad faith if there is *any evidence* to support it,[13] here, there is no such evidence. Accordingly, we reverse the dismissal of the indictment.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 13, 2009.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellant.
*Monique R. Walker, Ashleigh B. Merchant*, for appellee.

[13] See *Blackwell*, supra at 141 (1) (d) (the presence or absence of bad faith depends on the facts of a particular case). Accord *Shoemake*, supra.