## S09G1828. THE STATE v. MILLER.
(699 SE2d 316)

HINES, Justice.

We granted certiorari to the Court of Appeals in *State v. Miller*, 298 Ga. App. 584 (680 SE2d 627) (2009), to consider the proper standard for analyzing whether the destruction of potentially exculpatory evidence rises to a violation of due process and whether that standard was met in this case. For the reasons that follow, we conclude that the appropriate standard, which has been set forth in precedent from this Court, was not applied by the Court of Appeals, and further, that such standard was not met in Miller's case.

The opinion by the Court of Appeals stated the following. On November 22, 2007, a Gwinnett County police officer stopped a vehicle driven by Miller because of a tag violation. Upon learning that there were outstanding warrants for Miller's arrest on charges that he had committed a simple battery on September 9, 2007, a robbery and battery on October 5, 2007, and another battery and simple battery on September 28, 2007, the officer arrested Miller, and he was incarcerated. The officer seized Miller's cell phone for use as evidence, apparently because a picture of a gun was displayed on the screen saver and the officer thought Miller had been charged with armed robbery. However, the property sheet completed by the officer stated that the cell phone could be released to Miller, and it referenced only the traffic case against Miller and not the other criminal charges. Miller's residential address, as written down by the officer on the property sheet, was incorrect.

The tag violation against Miller was resolved, and the police department sent a notice dated December 19, 2007, informing Miller that it had property in its custody that would be disposed of within 90 days if he did not retrieve it. But, the notice was sent to the incorrect address set forth on the property sheet, rather than to Miller's correct permanent address or to the facility where he

remained in custody. The notice was returned to the police department with the notation "insufficient address, unable to forward."

The preliminary hearing on the outstanding charges was scheduled for December 5, 2007, by which time Miller was represented by appointed counsel. Miller told his attorney that his cell phone contained contact information for two witnesses who could provide Miller with an alibi on October 5, 2007, as well as a third witness who had information about the victim named in the indictment, which information corroborated Miller's defense.

On January 29, 2008, the police department submitted an application, pursuant to OCGA § 17-5-54,[1] for the destruction of

---

[1] OCGA § 17-5-54 provides:

(a) (1) Except as provided in Code Sections 17-5-55 and 17-5-56 and subsections (d), (e), and (f) of this Code section, when a law enforcement agency assumes custody of any personal property which is the subject of a crime or has been abandoned or is otherwise seized, a disposition of such property shall be made in accordance with the provisions of this Code section. When a final verdict and judgment is entered finding a defendant guilty of the commission of a crime, any personal property used as evidence in the trial shall be returned to the rightful owner of the property. All personal property in the custody of a law enforcement agency, including personal property used as evidence in a criminal trial, which is unclaimed after a period of 90 days following its seizure, or following the final verdict and judgment in the case of property used as evidence, and which is no longer needed in a criminal investigation or for evidentiary purposes in accordance with Code Section 17-5-55 or 17-5-56 shall be subject to disposition by the law enforcement agency. The sheriff, chief of police, or other executive officer of a law enforcement agency shall make application to the superior court for an order to retain, sell, or discard such property. In the application the officer shall state each item of personal property to be retained, sold, or discarded. Upon the superior court's granting an order for the law enforcement agency to retain such property, the law enforcement agency shall retain such property for official use. Upon the superior court's granting an order which authorizes that the property be discarded, the law enforcement agency shall dispose of the property as other salvage or nonserviceable equipment. Upon the superior court's granting an order for the sale of personal property, the officer shall provide for a notice to be placed once a week for four weeks in the legal organ of the county specifically describing each item and advising possible owners of items of the method of contacting the law enforcement agency; provided, however, that miscellaneous items having an estimated fair market value of $75.00 or less may be advertised or sold, or both, in lots. Such notice shall also stipulate a date, time, and place said items will be placed for public sale if not claimed. Such notice shall also stipulate whether said items or groups of items are to be sold in blocks, by lot numbers, by entire list of items, or separately.

(2) Items not claimed by the owners shall be sold at a sale which shall be conducted not less than seven nor more than 15 days after the final advertised notice has been run. The sale shall be to the highest bidder.

(3) If property has not been bid on in two successive sales, the law enforcement agency may retain the property for official use or the property will be considered as salvage and disposed of as other county or municipal salvage or nonserviceable equipment.

multiple items of personal property in the custody of the department in a number of cases. The traffic case against Miller was on the list, and one of the items of personal property was his cell phone. The application and an attached, sworn verification of the chief of police stated that the items of property to be destroyed had been "unclaimed for more than ninety (90) days after their seizure, or following the final conviction in the case of property used as evidence, and such items [were] no longer needed in a criminal investigation or for evidentiary purposes." The representations were untrue in regard to Miller's cell phone. Nonetheless, in reliance on them, the superior court signed an order on February 4, 2008, authorizing destruction of the property. Miller's cell phone was destroyed.

On February 20, 2008, Miller was indicted for one count of robbery and two counts each of battery and simple battery. At his arraignment on March 19, 2008, defense counsel informed the prosecuting attorney about the cell phone. Unaware of its destruction, defense counsel obtained the prosecutor's consent to release of the cell phone. After learning of its destruction, the defense filed a motion to dismiss the indictment based on the State's destruction of exculpatory evidence.

Following a hearing, the trial court initially determined that the State had not destroyed the cell phone with knowledge of its potentially exculpatory nature, and therefore, that the defense had

---

(4) With respect to unclaimed perishable personal property or animals or other wildlife, the officer may make application to the superior court for an order authorizing the disposition of such property prior to the expiration of 90 days.

(5) With respect to a seized motor vehicle which is not the subject of forfeiture proceedings, the law enforcement agency shall be required to contact the Georgia Crime Information Center to determine if such motor vehicle has been stolen and to follow generally the procedures of Code Section 40-11-2 to ascertain the registered owner of such vehicle.

(b) Records will be maintained showing the manner in which each item came into possession of the law enforcement agency, a description of the property, all efforts to locate the owner, any case or docket number, the date of publication of any newspaper notices, and the date on which the property was retained by the law enforcement agency, sold, or discarded.

(c) The proceeds from the sale of personal property by the sheriff or other county law enforcement agency pursuant to this Code section shall be paid into the general fund of the county treasury. The proceeds from the sale of personal property by a municipal law enforcement agency pursuant to this Code section shall be paid into the general fund of the municipal treasury.

(d) The provisions of this Code section shall not apply to personal property which is the subject of forfeiture proceedings as otherwise provided by law.

(e) The provisions of this Code section shall not apply to any property which is the subject of a disposition pursuant to Code Sections 17-5-50 through 17-5-53.

(f) The provisions of this Code section shall not apply to any abandoned motor vehicle for which the provisions of Chapter 11 of Title 40 are applicable.

not sufficiently showed the State's bad faith so as to justify dismissal of the charges, and that the appropriate remedy would be a jury instruction on spoliation of evidence. After determining that such a jury instruction was not appropriate in a criminal case, the trial court entered an order concluding that because the police officer had seized the cell phone without any real justification, the police department could have delivered the cell phone to Miller while he was being held in custody, the police department had destroyed the cell phone in violation of OCGA § 17-5-54 and through representations in the application that were inaccurate, and the police officer who seized the cell phone did not appear and testify at the hearing on Miller's motion to dismiss, acts amounting to conscious wrongdoing by the State had been shown as would justify dismissal of the two charged offenses that allegedly occurred on October 5, 2007. The trial court also found that the cell phone contained Miller's only means of contacting the three alleged exculpatory witnesses; because of the record-keeping practices of the cell phone provider, there were no call logs that could be subpoenaed. After giving the State an opportunity to present additional evidence, the trial court entered an order dismissing two of the five counts of the indictment.

The State then appealed to the Court of Appeals, which affirmed the judgment of the trial court. *State v. Miller,* supra. It concluded that the case was controlled by the decisions of the United States Supreme Court in *California v. Trombetta,* 467 U. S. 479 (104 SC 2528, 81 LE2d 413) (1984) and *Arizona v. Youngblood,* 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988), which both address whether a defendant's constitutional rights to due process have been violated when the police destroy potentially exculpatory evidence. After examining these cases, the Court of Appeals concluded:

> In our opinion, *Youngblood* describes three types of evidence: (1) that which the police knew "would have exculpated" the defendant, (2) that which the police knew "could have exculpated" the defendant, and (3) that of which nothing more can be said other than that it is potentially useful evidence. *Youngblood* seems to treat the first type of evidence as "material exculpatory evidence" and to make good or bad faith irrelevant when the police destroy or fail to preserve such evidence. As to the second and third types of evidence, *Youngblood* seems to require a showing of bad faith such as the type outlined in *Trombetta,* i.e., official animus toward the defendant or a conscious effort to suppress exculpatory evidence, before the state's destruction or failure to preserve such evidence rises to the level of a due process violation. And before dismissal of criminal

charges is warranted for destruction or failure to preserve any of the three types of evidence, it would seem that the *Trombetta* requirement, concerning the inability of the defendant to obtain comparable evidence by other reasonably available means, continues in effect.

It then cited Georgia cases that it said were consistent with its interpretation of *Trombetta* and *Youngblood*,[2] and ultimately concluded that because Miller's cell phone contained information that could have led to Miller's acquisition of evidence that could have exculpated him, the cell phone was properly characterized as type two or three *Youngblood* evidence, i.e., evidence that the police knew "could have exculpated" Miller or evidence that was "potentially useful"; it further concluded that the trial court's finding that the police had engaged in conscious wrongdoing and thus acted in bad faith in destroying the cell phone was not clearly erroneous, and that the evidence supported the trial court's finding that Miller could not obtain the information stored in the cell phone by other reasonably available means.

This Court has discussed in detail what is required, under *Trombetta* and *Youngblood,* in order to find that the State's destruction of evidence potentially exculpatory to a defendant violates the defendant's rights to due process. In *Walker v. State*, 264 Ga. 676 (449 SE2d 845) (1994), this Court considered a scenario much like the present in regard to the appropriate legal analysis. Following the victim's murder, police learned from a witness that she had heard that Walker and another individual had committed the murder and that they were driving around in Walker's car. Subsequently, the police stopped Walker's car and arrested him for theft of the vehicle. After Walker and his companions were removed from the car, police found a bill of sale for the car showing that Walker had purchased it. The police questioned all the occupants of the car about the victim's murder, and, on the basis of information acquired during those interrogations, charged Walker with the murder. A technician called

---

[2] It cited *Hannah v. State*, 278 Ga. 195, 197-198 (3) (599 SE2d 177) (2004) (no evidence of bad faith in State's failure to produce pill bottles found near victim and pills would have been cumulative of other evidence); *Doyal v. State*, 287 Ga. App. 667, 671 (6) (653 SE2d 52) (2007) (no evidence that police acted in bad faith in disposing of syringe, claimed by defendant as proving her innocence, as part of routine policy); *Moten v. State*, 252 Ga. App. 222, 224-225 (5) (a) (554 SE2d 553) (2001) (no evidence of police bad faith or that the alleged destroyed fingerprint evidence had "exculpatory value that was apparent before it was destroyed"); *Giraudy v. State*, 252 Ga. App. 219, 220-221 (1) (555 SE2d 874) (2001) (failure to show that audiotapes of drug buys were material or that State acted in bad faith in failing to turn over the tapes); and *State v. Blackwell*, 245 Ga. App. 135, 137-141 (2) (537 SE2d 457) (2000) (upheld finding of due process violation as subject urine sample had an exculpatory value that was apparent before its destruction, and an implicit finding of the State's bad faith).

to the crime scene located and photographed a set of automobile tire tracks in the victim's yard; the technician used a ruler so that the tread type and width of the tires could be measured to scale. Investigators processed the interior and exterior of the car, but they found no evidence of blood. Fiber, hair and other tests done on the interior of the car likewise failed to connect any of the suspects with the murder. Contrary to ordinary police practice, no photographs were taken of the car or the tires, nor were impressions made of the tires. At trial, none of the investigating officers could recall anything about the type, size or series of the tires; however, the officer who processed the car testified that he had measured the tire tracks found at the crime scene and that they were consistent with the wheel base of Walker's car, though he did not record the measurement of the wheel base in his report. The processing officer found wrappers, bags and other paper items from a fast food restaurant in the car, and he threw these items away, stating that he did not know whether a receipt from the restaurant had been among the items discarded. He failed to make an inventory of the car's contents despite the fact that it was standard policy to do so. At the request of the lead investigator and less than a week after the murder, the processing officer released the car to the used car dealership from which Walker had purchased it. When the car was released it contained personal property belonging to Walker. It was standard procedure to go through the property and to deal with the evidence officer, but that procedure was not followed and the officer had not been required to secure a signed release form, and he did not know who had picked up the car or when the pickup had been made. The police released the car even though they had discovered papers showing that Walker had purchased the car and that the car would have constituted evidence in the car theft with which Walker was also charged. Walker's downpayment for the car was never recovered, and the car was never located.

The indictment against Walker included the auto theft charge. Walker was never asked about the theft of the car, and the theft charge was dismissed prior to the murder trial. The police report of the crime indicated that Walker's car had been released to the automobile dealership. At a pre-trial hearing, Walker's counsel requested permission to view Walker's car, and the assistant district attorney told defense counsel that the car was either at the crime lab or in the impound lot. Defense counsel did not receive a copy of the report indicating that the car had been released until nearly a year after the release. Walker argued that his due process rights were violated because the release of his automobile and the destruction of materials inside denied him access to exculpatory evidence; he maintained that there might have been a receipt among the paper

items from the fast food restaurant which might have shown the time of the purchase or the order number and that by releasing the car the State denied the jury a chance to see that there were no blood stains in or on the car, and he was prevented from possibly showing that the car's tire treads did not match those left in the murder victim's yard. In this context of violation of police procedure and arguable negligence on the part of the police in regard to the subject evidence, this Court plainly addressed the interplay between *Youngblood* and *Trombetta*:

> In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. To meet the standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Walker v. State* at 680 (3). Thus, the threshold inquiry in this analysis is whether the subject evidence is so material to the defense that it is of constitutional import.

> Evidence is constitutionally material when its *exculpatory value is apparent before it was lost or destroyed* and is of such a nature that a defendant would be unable to obtain other comparable evidence by other reasonably available means.

*Ballard v. State*, 285 Ga. 15, 16 (2) (673 SE2d 213) (2009) (emphasis supplied). Therefore, the fact that evidence may be "potentially useful" in a defendant's attempt at exoneration is insufficient to sustain a claim that the defendant has suffered an abridgment of due process of law due to the destruction or loss of the evidence. *Krause v. State*, 286 Ga. 745, 752 (8) (691 SE2d 211) (2010). The key is the "apparent exculpatory value" of the evidence prior to its destruction or loss and "apparent" in this context has been defined as "readily seen; visible; readily understood or perceived; evident; obvious." *State v. Brawner*, 297 Ga. App. 817, 819 (678 SE2d 503) (2009).

Applying these guidelines to the present case compels the conclusion that Miller has failed to show a violation of due process as the result of the destruction of his cell phone. There were simply no circumstances outlined by the Court of Appeals from which it could be concluded that the exculpatory value of Miller's cell phone was

obvious or evident to police or any other State actor before the cell phone was destroyed. In fact, the facts point to a conclusion which is quite the contrary. The cell phone was initially seized because police believed that it was potentially inculpatory, as displaying a picture of a gun, for possible use by the State at trial for what was believed to be an armed robbery charge against Miller. What followed in regard to the cell phone and its fate is accurately characterized as an unfortunate series of mishandlings, mistakes, and negligence by police, but in no manner does the scenario presented by the Court of Appeals permit the conclusion that it was apparent to police or anyone else involved in the seizure, custody, or disposition of the cell phone that it could possibly aid Miller in the defense of any criminal charges. Consequently, the evidence was not constitutionally material. *Ballard v. State*, supra at 16 (2).

The judgment of the Court of Appeals is reversed.

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 20, 2010.

*Daniel J. Porter, District Attorney, William C. Akins, Assistant District Attorney,* for appellant.

*Clark & Towne, Jack E. Harrell, Jr., Sharon L. Hopkins,* for appellee.