A03A1717. SHOEMAKE v. THE STATE.
(596 SE2d 805)

BARNES, Judge.

A jury found Dave Shoemake guilty of following too closely (OCGA § 40-6-49 (a)) and two counts of driving under the influence

---

(OCGA § 40-6-391 (a) (1) and (5)). Shoemake appeals, contending the trial court erred by denying his motion to suppress the results of a blood test because the State destroyed his blood sample before he could independently test it and he was not given implied consent warnings at the time of his arrest. Shoemake also asserts insufficient evidence supports his conviction because the trooper who arrested him did not see him drive and the State failed to prove chain of custody for the blood sample showing a blood alcohol level of 0.178 grams. For reasons that follow, we affirm.

1. Shoemake contends the trial court should have suppressed the test of his blood alcohol content because the State violated his due process rights by destroying the sample before he could test it independently. In order to prevail on this claim, Shoemake must show that the evidence was material and that the police acted in bad faith in failing to preserve it. *Arizona v. Youngblood*, 488 U. S. 51, 57-58 (109 SC 333, 102 LE2d 281) (1988); *Walker v. State*, 264 Ga. 676, 680 (3) (449 SE2d 845) (1994); *Milton v. State*, 232 Ga. App. 672, 679 (6) (503 SE2d 566) (1998). "Bad faith is a question of fact for the trial court to determine, and we will not disturb a trial court's finding on bad faith if there is any evidence to support it." *Swanson v. State*, 248 Ga. App. 551 (1) (a) (545 SE2d 713) (2001). In this case, the trial court denied the motion to suppress because he presented no evidence the blood sample might have been exculpatory, and no evidence or even allegation of improper motive. The State Crime Lab destroyed the blood sample "as part of a normal purging process" more than a year after it had been taken from Shoemake. The trial court also denied the motion because the blood sample was destroyed over a year after defense counsel entered an appearance, during which time Shoemake made no attempt to test the sample. Compare *State v. Blackwell*, 245 Ga. App. 135 (537 SE2d 457) (2000) (defendant's destroyed urine sample initially tested negative for drugs and court order existed allowing defendant to test sample). As the findings are supported by the record, we affirm the trial court's ruling.

2. Shoemake contends the trial court should have granted his motion to suppress the blood test results because he was not read the implied consent warning at the time of his arrest as required by Georgia law. See OCGA § 40-6-392 (a) (4); *Perano v. State*, 250 Ga. 704 (300 SE2d 668) (1983).

> When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless

they are clearly erroneous and will not be disturbed if there is any evidence to support them.

(Citation and punctuation omitted.) *State v. Williams*, 225 Ga. App. 736, 737 (1) (484 SE2d 775) (1997).

In this case, the arresting officer testified in a motion hearing that he read the implied consent warning to Shoemake after he arrested him. He further testified on cross-examination that it is his habit to always read the implied consent warning "before we get to the ride," meaning before he transports them from the scene. The officer testified that he did not, however, have a distinct memory of where he read the implied consent warning to Shoemake.

Shoemake contends it is unclear from this record whether he was given his implied consent warning at the scene of his arrest or later at the hospital and that the results of his blood test were therefore inadmissible. We disagree. The officer's testimony about his habit and lack of a specific recollection "went to its weight and credibility[,] but [does] not affect its sufficiency on appeal." *Wesley v. State*, 228 Ga. App. 342, 343 (1) (491 SE2d 824) (1997) (finding sufficient evidence that implied consent was given based on officer's testimony that he always used whichever implied consent card was in effect). It did not render the testimony insufficient to prove that the implied consent warning was given at the time of Shoemake's arrest. The trial court properly denied this portion of Shoemake's motion to suppress.

3. In his final enumeration of error, Shoemake contends the evidence was insufficient to affirm his conviction.

(a) In support of this argument, Shoemake asserts the State failed to prove the chain of custody for his blood sample and that we should therefore not consider the test results in our sufficiency analysis.

Where the State seeks to introduce evidence of a fungible nature, it must show a chain of custody adequate to preserve the identity of the evidence. The burden is on the State to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not [disprove] every possibility of tampering, and need only establish reasonable assurance of the identity of the evidence. When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight.

(Citations and punctuation omitted.) *Anderson v. State*, 247 Ga. 397, 399 (2) (276 SE2d 603) (1981).

We have reviewed the chain of custody testimony and find that the State established reasonable assurances of the identity of the blood sample. Discrepancies in the testimony about whether the sample was sent to the Georgia Bureau of Investigation Crime Lab by mail or United Parcel Service go to the weight of the evidence and do not preclude admission of testimony about the blood sample. See *Carver v. State*, 175 Ga. App. 599, 601 (2) (333 SE2d 697) (1985) (chain of custody established even though testimony differed about method and recipient of sample's delivery).

(b) Shoemake contends insufficient evidence supports his less safe conviction under OCGA § 40-6-391 (a) (1) because the arresting officer did not see him drive, but was instead dispatched to the scene of the accident. However, after arriving at the scene, Shoemake told the arresting officer "that he was getting ready to get off on Highway 61 when a tractor trailer pulled out in front of him, and he had nowhere else to go. He had to hit the tractor trailer." Shoemake never told the officer that he was not driving or that another person had been driving his car. The officer, who is an experienced accident investigator, further testified that the tractor-trailer's lane was clearly established when it was struck, that Shoemake admitted that he had been drinking, that he smelled like alcohol, that his eyes were bloodshot, and that his speech was slurred.

We find this evidence, in addition to Shoemake's blood alcohol level of 0.178 grams, sufficient to prove a less safe DUI violation. *Heath v. State*, 229 Ga. App. 69 (493 SE2d 225) (1997).

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED MARCH 18, 2004.

*Virgil L. Brown & Associates, Virgil L. Brown, Eric D. Hearn, Larkin M. Lee, T. Robert Perkerson, Ronald J. Ellington, Alvah H. Pasley*, for appellant.

*S. James Tuggle, Solicitor-General*, for appellee.