A07A0496. DUNBAR v. THE STATE.
(643 SE2d 292)

BLACKBURN, Presiding Judge.

Following a bench trial, Darlene Dunbar appeals her conviction of driving under the influence by reason of alcohol concentration of 0.08 grams or more, contending that the trial court erred in denying her motion to suppress, because (1) the arresting officer lacked reasonable articulable suspicion justifying the initial traffic stop, and (2) the arresting officer failed to read the implied consent notice in a timely manner.[1] For the reasons that follow, we affirm.

While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the

---

[1] Dunbar's brief also contends that the trial court erred with respect to a DUI less safe charge. However, the DUI less safe charge was nolle prossed, so that contention presents nothing for review.

credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations omitted.) *Vansant v. State.*[2] So viewed, the record shows that, while stopped on the side of the road at approximately 7:00 p.m., an officer observed Dunbar driving around a curve on the wrong side of the road, nearly leaving the pavement on the other side. The officer pulled onto the road, followed Dunbar for approximately a mile, and executed a traffic stop. When the officer asked Dunbar for her driver's license, she explained that she did not have one, but she was driving because she and her passenger had been drinking and he was too drunk to drive.

As the officer spoke further with Dunbar, she admitted "I know I'm DUI," and the officer gave her a field alco-sensor test, which registered positive. The officer then told Dunbar she was under arrest for DUI, handcuffed her, and placed her in the back of his police cruiser. After securing Dunbar and calling a tow truck, the officer interviewed the passenger, patted him down, asked him about the presence of weapons or open containers of alcohol, and began inventorying Dunbar's vehicle. During the inventory, the officer found containers with a strong odor of alcohol.

When the tow truck arrived, the officer read Dunbar the implied consent notice in accordance with OCGA § 40-5-67.1 (b) (2), and Dunbar consented to a breath test. The officer then took her to the sheriff's office, where a breath test was administered, yielding alcohol concentrations of 0.147 and 0.150 grams. Dunbar was charged with DUI per se,[3] DUI less safe,[4] driving without a license,[5] and weaving on a roadway.[6] Prior to trial, Dunbar moved to suppress the evidence from the traffic stop and subsequent breath test, which motion was denied. After a bench trial, Dunbar was convicted of DUI per se and driving without a license,[7] giving rise to this appeal of the DUI per se conviction.

1. Dunbar contends that the traffic stop was unlawful, because the officer did not have reasonable articulable suspicion to stop Dunbar. We disagree.

---

[2] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[3] OCGA § 40-6-391 (a) (5).

[4] OCGA § 40-6-391 (a) (1).

[5] OCGA § 40-5-20 (a).

[6] OCGA § 40-6-48 (1).

[7] The trial court found Dunbar not guilty of weaving because the road was not lined, which ruling the State has not appealed.

An officer may conduct a brief investigative stop of a vehicle if the stop is justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. A court must consider whether, under the totality of the circumstances, the police officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity. However, the stop of a vehicle is also authorized merely if the officer observed a traffic offense.

(Citations and punctuation omitted.) *Jones v. State.*[8]

Here, the officer testified that he saw Dunbar rounding a corner on the wrong side of the road and that Dunbar's "vehicle actually almost went off the road." As driving on the wrong side of the road is itself a traffic offense, see OCGA § 40-6-40, the officer had reasonable articulable suspicion that a traffic offense had occurred. Moreover, the officer testified that Dunbar's driving behavior caused him to suspect that she might be intoxicated. Based on the observation by the officer of Dunbar's rounding the curve on the wrong side of the road, the officer was authorized to perform a traffic stop to investigate this suspicion also.

2. Dunbar also contends that the trial court should have suppressed the results of the State's breath test because the officer did not read the implied consent notice "at the time of arrest" in accordance with OCGA § 40-6-392 (a) (4). We disagree.

OCGA § 40-6-392 (a) (4) provides, in part, that "[t]he arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section." Our Supreme Court has interpreted this to require exclusion of the results of a State-administered chemical test where the notice was not given "at the time of arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant." *Perano v. State.*[9]

Here, after the officer arrested Dunbar and placed her in the back seat of his cruiser, he called a tow truck and turned his attention to Dunbar's passenger, who was more intoxicated than Dunbar. After searching the passenger and asking him about weapons, the officer inventoried Dunbar's vehicle, requesting information from the passenger as he did so. During the search, the officer found containers having a strong alcohol smell, and conversed with another officer on the scene about whether Dunbar might be charged with an open

---

[8] *Jones v. State*, 259 Ga. App. 506, 507 (1) (578 SE2d 165) (2003).
[9] *Perano v. State*, 250 Ga. 704, 708 (300 SE2d 668) (1983).

container violation. After the officer completed the inventory, he read Dunbar the implied consent notice and requested her consent to a chemical test of her breath.

Approximately 25 minutes elapsed between the time the officer handcuffed Dunbar and the time the officer read her the implied consent notice. Dunbar argues that the 25-minute delay did not satisfy the requirement in OCGA § 40-6-392 (a) (4) to read the implied consent notice "at the time of arrest." However, the notice is deemed timely if it is given "at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant." *Perano*, supra, 250 Ga. at 708. Here, the officer called a tow truck because he determined that neither occupant of Dunbar's vehicle was fit to drive. He therefore inventoried the vehicle before releasing it to the tow truck. He also evaluated the intoxicated passenger to rule out any safety threats posed by him or potential weapons in Dunbar's vehicle. As the tow truck arrived, and before transporting Dunbar to the sheriff's office, the officer read Dunbar the notice. In light of the circumstances of this case, we affirm the trial court's ruling that the delay in reading the implied consent notice was warranted. See *Mason v. State*[10] (allowing a 20- to 30-minute delay); *Shoemake v. State*[11] (affirming denial of motion to suppress where officer read the notice "before we get to the ride" to the police station); *Naik v. State*[12] (allowing 18-minute delay).

This case is distinct from others where this Court has ruled that a delay was not warranted by the circumstances. For example, in *Vandiver v. State*,[13] we reversed a trial court's denial of a motion to suppress where the arresting officer read the notice after taking the defendant to the police station, on the ground that this was standard procedure. In light of the lack of circumstances warranting such a delay in that case, we held that the notice was not timely read. Here the notice was read at the scene of the arrest before the officer transported Dunbar to the sheriff's office. Moreover, the officer's delay resulted from his need to ensure his safety by searching and interviewing Dunbar's intoxicated passenger, to investigate and secure the scene, and to inventory Dunbar's car before the tow truck arrived. Under these circumstances, the trial court did not err in finding the delay warranted by the circumstances.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

---

[10] *Mason v. State*, 177 Ga. App. 184, 186 (2) (338 SE2d 706) (1985).

[11] *Shoemake v. State*, 266 Ga. App. 342, 344 (2) (596 SE2d 805) (2004).

[12] *Naik v. State*, 277 Ga. App. 418, 420 (626 SE2d 608) (2006).

[13] *Vandiver v. State*, 207 Ga. App. 836, 837-838 (1) (429 SE2d 318) (1993).

DECIDED MARCH 5, 2007.

*Michael A. Dillon*, for appellant.
*Richard G. Milam, District Attorney, Jason S. Johnston, Assistant District Attorney*, for appellee.