**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN , JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 7, 2013**

# In the Court of Appeals of Georgia

A12A1808. THE STATE v. ZETH.

McFADDEN, Judge.

Hazel Zeth was charged by accusation with driving under the influence of alcohol with a blood-alcohol concentration greater than 0.08 grams, driving under the influence of alcohol to the extent she was a less safe driver, driving with an open container of alcohol and failing to maintain a single lane. She filed a motion to suppress, which the trial court granted, finding that the officer who had stopped her did not have reasonable suspicion for the stop. The state appeals, challenging the suppression ruling. Because the undisputed facts show that the officer did have a reasonable suspicion to stop Zeth for a traffic violation, we reverse.

On appeal from a ruling on a motion to suppress, we must construe the evidence most favorably to affirming the trial court's factual findings and judgment. We accept the trial court's factual and

credibility determinations unless they are clearly erroneous, and the factual findings will be upheld if they are supported by any evidence. The trial court's application of the law to undisputed facts, however, is subject to a de novo standard of review.

(Citation omitted.) *Davis v. State*, 303 Ga. App. 785 (694 SE2d 696) (2010).

So construed, the evidence shows that on July 14, 2010, Zeth was driving her car southbound on a road in Nashville, Georgia. As she negotiated a sharp curve in the road, she veered left into the opposite northbound side of the road and continued driving on that left side of the road around the curve. Police officer Robert Owens was driving behind Zeth's car, and upon seeing her veer into and drive on the far left side of the road, the officer turned on his blue lights and stopped the vehicle.

An officer may conduct a brief investigative stop of a vehicle if the stop is justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. A court must consider whether, under the totality of the circumstances, the police officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity. However, the stop of a vehicle is also authorized merely if the officer observed a traffic offense. Under OCGA § 40-6-40, vehicles are required to be driven on the right side of the road.

(Citations omitted.) *Parker v. State*, 317 Ga. App. 93, 95 (1) (a) (730 SE2d 717) (2012).

Here, the undisputed facts are that Officer Owens observed Zeth veer into and drive on the wrong side of the road. "As driving on the wrong side of the road is itself a traffic offense [under] OCGA § 40-6-40, the officer had reasonable articulable suspicion that a traffic offense had occurred. . . . Based on the observation by the officer of [Zeth's] rounding the curve on the wrong side of the road, the officer was authorized to perform a traffic stop[.]" *Dunbar v. State*, 283 Ga. App. 872, 874 (1) (643 SE2d 292) (2007).

In concluding otherwise, the trial court noted that although the officer initially charged Zeth with failure to maintain lane under OCGA § 40-6-48, which pertains to driving on roads laned for traffic, it is undisputed that the road in question does not have clearly marked lanes. The court further reasoned that Zeth's driving on the left side of the road did not pose a danger to oncoming traffic because the driver of an approaching vehicle could have seen Zeth's headlights. Similarly, Zeth argues that, for various reasons, she did not actually violate OCGA § 40-6-40. However, the reasoning of both Zeth and the trial court misses the mark and does not support a legal conclusion that the officer lacked reasonable suspicion to perform a traffic stop. Even if it is eventually found that Zeth did not violate any specific traffic provision, in determining whether a traffic stop was supported by reasonable suspicion

3

we have rejected the notion that the police officer must know with certainty that each element of a particular crime could be established[.] If the officer acting in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later legal determination that the defendant's actions were not a crime according to a technical legal definition or distinction determined to exist in the penal statute. It is not the officer's function to determine on the spot such matters as, e.g., jurisdiction or the legal niceties in definition of a certain crime, for these are matters for the courts. The question to be decided is whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing.

(Citations and punctuation omitted.) *State v. Armstrong*, 223 Ga. App. 350, 352 (2) (477 SE2d 635) (1996). Thus, "[e]ven if the driver's actions do not amount to a per se traffic violation, an officer may have a reasonable, articulable suspicion that a traffic offense was being committed. [Cit.]" *State v. Calhoun*, 255 Ga. App. 753, 755 (566 SE2d 447) (2002).

As recounted above, the undisputed facts of this case establish that the officer saw Zeth driving on the wrong side of the road. "The officer was clearly authorized to stop the vehicle and investigate this apparent violation of the traffic laws." *State v. Bute*, 250 Ga. App. 479, 481 (552 SE2d 465) (2001). See also *Parker*, supra; *Dunbar*, supra. Accordingly, the stop was legal and "[t]he trial court erred in granting [the] motion to suppress." *Bute*, supra at 482.

4

*Judgment reversed. Barnes, P. J., and McMillian, J., concur.*