**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 8, 2019**

# In the Court of Appeals of Georgia

A19A1655. THE STATE v. SHAW.

PER CURIAM.

The State appeals from the trial court's grant of Larry Shaw's motion to suppress evidence obtained as a result of Shaw's traffic stop. The trial court granted the motion to suppress, finding that the law enforcement officer lacked reasonable articulable suspicion to justify the stop of Shaw's vehicle. For the reasons set forth below, we affirm.

In a hearing on a motion to suppress, the trial court sits as the trier of fact and its findings are analogous to a jury verdict. *Watts v. State*, 334 Ga. App. 770, 771 (780 SE2d 431) (2015). Accordingly, we defer to the trial court's credibility determinations and will not disturb its factual findings in the absence of clear error. Id. And "[w]hen reviewing the grant or denial of a motion to suppress, an appellate

court must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment." *Caffee v. State*, 303 Ga. 557, 557 (814 SE2d 386) (2018). Additionally, as a general rule, an appellate court must limit its "consideration of the disputed facts to those expressly found by the trial court." Id. (punctuation omitted). "An appellate court may, however, consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape." Id. at 559 (1) (punctuation omitted). Finally, although we defer to the trial court's fact-finding, we owe no deference to the trial court's legal conclusions. *Hughes v. State*, 296 Ga. 744, 750 (2) (770 SE2d 636) (2015). Instead, we independently apply the law to the facts as found by the trial court. Id.

So viewed, the record shows that Shaw was arrested for driving under the influence after he was stopped for an alleged traffic violation. On July 27, 2018, a police officer was "pacing traffic" to provide safety to officers working on an accident up ahead. The officer activated his patrol car's blue lights and weaved from left to right over all three lanes of the road. Most cars stayed behind him. Three cars passed him, one using the right shoulder, one using the left lane, and one using the right lane. A fourth vehicle, Shaw's, passed the officer on the right about ten seconds

2

after the third car and within view of the third car. As the police officer drifted back towards the far right lane, he came very close to the fourth car. The officer then initiated a traffic stop on the fourth car. The officer told the driver, Shaw, that he had stopped the car because Shaw had not obeyed the officer's traffic directive to stay behind the patrol car. Shaw responded that he passed the officer "because everyone else was doing it."

After he was arrested and charged with driving under the influence, Shaw moved to suppress all evidence obtained as a result of the traffic stop. At the hearing on Shaw's motion, the officer testified and the State presented a video recording of the incident from the officer's dash camera. The trial court granted the motion to suppress, finding that there was no reasonable articulable suspicion to justify the stop. The State now appeals from that order.

"For a traffic stop to be valid, an officer must identify specific and articulable facts that provide a reasonable suspicion that the individual being stopped is engaged in criminal activity." *Jones v. State*, 291 Ga. 35, 38 (2) (727 SE2d 456) (2012). "Indeed, an investigatory stop must be justified by some *objective* manifestation that the person stopped is, or is about to be, engaged in criminal activity." *State v. Mincher*, 313 Ga. App. 875, 877 (723 SE2d 300) (2012) (punctuation omitted).

3

"Although an officer's honest belief that a traffic violation has actually been committed in his presence may ultimately prove to be incorrect, such a mistaken-but-honest belief may nevertheless demonstrate the existence of at least an articulable suspicion and reasonable grounds for the stop." *Worsham v. State*, 251 Ga. App. 774, 775 (554 SE2d 805) (2001). "The question to be decided is whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing." Id.

1. The State argues that the officer had a reasonable articulable suspicion that Shaw illegally failed to obey an authorized person directing traffic, in violation of OCGA § 40-6-2, which provides that "no person shall fail or refuse to comply with any lawful order or direction of any police officer . . . with authority to direct, control, or regulate traffic." We disagree.

The officer testified that he was pacing traffic in order to slow it down and that he kept cars behind him by weaving from left to right over all three lanes of the road with the patrol car's lights on. However, it is undisputed that the officer let three cars pass his patrol car without initiating traffic stops. Only after Shaw's car, the fourth car, passed the patrol car did the officer initiate a traffic stop.

4

After hearing the officer's testimony and reviewing the video of the traffic stop, the trial court found that the officer's manner of slowing down traffic, by slowly driving from left to right over three lanes with his lights on, did not constitute a clear police order to stay behind the officer's vehicle. Additionally, the trial court determined that the officer's traffic directive was ambiguous because the officer allowed three cars to pass him. After independent review of the video, we discern no clear error with these factual findings. See *Watts*, 334 Ga. App. at 771; *Caffee*, 303 Ga. at 557. Because the officer did not give a clear directive that cars must not pass him and even allowed three cars to pass him without stopping them, Shaw did not violate any clear directive by passing the patrol car. Additionally, there was no objective basis for the officer to reasonably believe that Shaw violated any such directive. See *Mincher*, 313 Ga. App. at 877-878 (affirming the trial court's grant of a motion to suppress evidence obtained as a result of a traffic stop because the conduct that was alleged as the basis for the stop was not illegal and there was no objective basis to suspect that the defendant was or was about to be engaged in any criminal activity).

2. The State also argues that the officer had reasonable articulable suspicion to stop Shaw for "any alleged traffic violation that the police officer observed in his

5

presence." The State contends that the officer could have cited Shaw for violating OCGA §§ 40-6-390, 40-6-74, and 40-6-48 based on the video and the officer's testimony. We disagree.

"[T]he stop of a vehicle is ... authorized merely if the officer observed a traffic offense." *State v. Zeth*, 320 Ga. App. 140, 141 (739 SE2d 443) (punctuation omitted); see also *Worsham*, 251 Ga. App. at 775-776 (even assuming that an officer's mistaken belief that Georgia's motor vehicle registration law had been violated was not reasonable, he was nonetheless authorized to initiate the traffic stop after observing the defendant violate another traffic law by failing to maintain his lane). "So long as the stop was based upon conduct the officer observed, not on a mere 'hunch,' and it was not pretextual, arbitrary, or harassing, an officer may act on a legitimate concern for public safety in stopping a driver." *State v. Calhoun*, 255 Ga. App. 753, 755 (566 SE2d 447) (2002). Furthermore, even if an "officer's honest belief that a traffic violation has actually been committed in his presence may ultimately prove to be incorrect, such a mistaken-but-honest belief may nevertheless demonstrate the existence of at least an articulable suspicion and reasonable grounds for the stop." *Worsham*, 251 Ga. App. at 775.

We address each of the violations alleged by the State in turn. OCGA § 40-6-390 provides that "[a]ny person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving." Here, the video shows that the patrol car drifted towards Shaw's car, as Shaw drove past the patrol car in the far right lane. The trial court found that "rather than [Shaw] almost striking the officer's vehicle, it was the officer who came close to [Shaw's] vehicle when he drove back across the lanes." The court further found that Shaw "safely passed the officer on the right." Based on independent review of the video, we discern no clear error with these factual findings. See *Watts*, 334 Ga. App. at 771. Shaw did not drive in a reckless manner and did not violate OCGA § 40-60-390. Accordingly, this alleged violation cannot provide a valid basis for Shaw's traffic stop. See *Zeth*, 320 Ga. App. at 141.

As to OCGA § 40-6-74 (a),[1] this statute concerns a driver's failure to yield to emergency vehicles. "To violate the statute, an individual must obstruct the roadway, thereby preventing an emergency vehicle from proceeding upon its route in pursuit of a fleeing suspect or other emergency." *Jackson v. State*, 223 Ga. App. 27, 28 (1) (477 SE2d 28) (1996). Here, the video shows that Shaw passed the patrol car in the far right lane, leaving two other empty lanes open for the patrol car to proceed forward unobstructed. Therefore, Shaw did not obstruct the roadway and did not fail to yield the right-of-way to the officer. Accordingly, this alleged violation cannot provide a valid basis for the traffic stop of Shaw's car. See *Zeth*, 320 Ga. App. at 141.

Finally, OCGA § 40-6-48 (1) requires a vehicle to "be driven as nearly as practicable entirely within a single lane and [that it] not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

---

[1]Notably, at the suppression hearing, the State distanced itself from relying on a violation of OCGA § 40-6-74 as a basis for a valid traffic stop. The State explained that OCGA § 40-6-74, which deals with a failure to yield, was not applicable to this case because, here, Shaw was charged with a different statute, which deals with a failure to obey an authorized person directing traffic. Generally, we do not address arguments made for the first time on appeal. See *Fides v. State*, 237 Ga. App. 607, 607 (1) (516 SE2d 101) (1999) ("This Court is a court for the correction of legal errors and has no jurisdiction to address issues that are raised for the first time on appeal. . . . Also, [a party] may not abandon an issue in the trial court and on appeal raise questions on which the trial court has not ruled." (punctuation and citation omitted)).

Here, it appears that Shaw may have driven on the road's far right white line. However, as the trial court noted, it is not clear that Shaw's car went over the line and, even if he did drive over the white line, he appeared to do so to avoid the officer's patrol car, which was drifting into Shaw's lane. Because it is not entirely clear that Shaw violated OCGA § 40-6-48 (1) by failing to maintain his lane, we must review this evidence in the light most favorable to the trial court's findings and judgment. See *State v. Dykes*, 345 Ga. App. 721, 723 (1) (477 SE2d 106) (2019). Thus, we defer to the trial court's finding that there was no reasonable articulable suspicion to justify the stop of Shaw's vehicle, including for failure to maintain a lane.

Construing the evidence most favorably to uphold the trial court's ruling, we conclude that the trial court did not err in finding that the traffic stop was unreasonable and not based on the officer's observation of a traffic offense. Accordingly, we affirm the trial court's grant of Shaw's motion to suppress.

*Judgment affirmed. Division Per Curiam. All Judges concur.*