S91A0685. DAVIS v. THE STATE.
S91A0686. OWENS v. THE STATE.
S91A0687. DAVIS v. THE STATE.
(405 SE2d 648)

WELTNER, Justice.

Farris M. Davis, Sr., shot and killed Bradford Thomas with a rifle. He was convicted by a jury of aggravated assault, malice murder, and felony murder. Benny Owens was convicted by the jury of aggravated assault, felony murder, and conspiracy to violate the Georgia Controlled Substances Act. F. Michael Davis, Jr., was convicted by the jury of aggravated assault and felony murder.[1]

There was evidence indicating as follows: Owens was involved in a drug sale that two men were conducting with Thomas. Owens and the two Davises were concerned that the sale was fraudulent, and that Thomas had been involved in a prior deceptive drug sale involving them. Owens drove to the scene of the crime and struck Thomas in the face with a shotgun when the latter tried to get out of a car. Thereafter, Thomas' body was found in the middle of a residential road, fatally shot from behind. After the homicide, Owens tried to conceal the car in which Thomas had been riding. Owens removed a part from the shotgun, which later was found in his house. The murder weapon was found in Davis, Sr.'s house.

S91A0685. Farris M. Davis, Sr.

1. (a) Davis contends that the search of his house was without probable cause and that the seizure of the murder weapon should have been suppressed. He bases this upon the fact that a detective informed the magistrate that the rifle was buried behind the house,

---

[1] The crimes were committed on October 29, 1989, and the appellants were indicted on February 15, 1990. The appellants were found guilty on May 18, 1990, sentenced the same date, and resentenced on August 21, 1990. The motions for new trial of Davis, Jr. and Sr., and of Owens were filed on May 21 and June 5 and 11, 1990, respectively, and denied on August 17, 1990. Notices of appeal were filed on September 17, 1990. The appeals were docketed on February 20, 1991. Oral arguments were heard on May 7, 1991.

yet the search warrant and the search included the house.

(b) In *Gumina v. State*, 166 Ga. App. 592, 595 (2) (305 SE2d 37) (1983), it was stated:

> " 'Premises' contemplates the entire living area used by its occupant. Living area may be otherwise expressed as the 'curtilage.' The word 'curtilage' includes yards and grounds of a particular address together with the gardens, barn and buildings thereon. [Cit.] The principle of curtilage comes to us from the common law and traditionally has included out-buildings, which may be searched as part of the 'premises' though not specifically described so long as permission has been obtained to search the 'premises.' [Cit.]" *Barton v. State*, 161 Ga. App. 591 (1), 592 (288 SE2d 914) [1982].

There was no error.

2. (a) Davis argues that the trial court erred in preventing him from cross-examining the investigating officer about the statement of the Davises' after the state introduced evidence concerning the giving of the statement.

(b) OCGA § 24-3-38 ("When an admission is given in evidence by one party, it shall be the right of the other party to have the whole admission and all the conversation connected therewith admitted into evidence") and OCGA § 24-9-64 ("The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him") are both inapplicable, because the substance of the statement was never introduced in evidence.

3. (a) Davis urges as error the trial court's denial of his motion for severance. He relies upon *Reeves v. State*, 237 Ga. 1, 3 (226 SE2d 567) (1976), which cites *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), for the proposition that:

> the admission of a co-defendant's confession that implicated another defendant at a joint trial constitutes prejudicial error even though the trial court gave clear, concise, and understandable instructions that the confession could only be used against the co-defendant and must be disregarded with respect to the defendant.

He argues that the *Bruton* problem as to co-defendant Owens' involvement could have been solved had the court allowed the statement to be paraphrased; that after the state tendered part of the statement, he then could bring out the whole of it, even if much of it was self-serving or exculpatory; that this denied him cross-examination; and that severance should have been granted and all exculpatory statements admitted.

(b) "These facts do not present a *Bruton* violation. The state did not introduce [the Davises'] statement for any purpose." *Boyd v. State*, 244 Ga. 130, 131 (1) (259 SE2d 71) (1979). Davis has not shown the requisite prejudice to require a reversal based on the trial court's denial of his motion to sever. *Satterfield v. State*, 256 Ga. 593 (3) (351 SE2d 625) (1987).

4. (a) Davis enumerates as error the trial court's disallowing the evidence to be reopened to admit a photograph of the deceased's body, in response to the jury's expressed confusion over conflicting evidence of the entrance and exit wounds.

(b) "A 'trial court has a sound discretion to determine whether the evidence in a case may be reopened.' [Cits.]" *Johnson v. State*, 254 Ga. 591, 598 (8) (331 SE2d 578) (1985). There was no abuse of discretion.

### *S91A0687. F. Michael Davis, Jr.*

5. The enumerations of error in this case are identical to those in the case of Davis, Sr. Our rulings, too, are the same.

### *S91A0686. Benny Owens*

6. (a) Owens contends that the search of his residence was invalid because probable cause did not exist for the issuance of the search warrant. He argues that the six-page affidavit supporting the search warrant did not mention his name until the last sentence; that this sentence was not corroborated or related to the remainder of the affidavit; that the reliability of the informant was not shown; that there was no reference to evidence of the contraband at Owens' residence (which was different from his residence at the time of Thomas' death); and that the affidavit was made two months after the homicide.

(b) The magistrate was informed that the information on the affidavit came from three persons who were involved in the murder, two of whom were eyewitnesses who corroborated the third.

In *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984), we quoted from *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), as follows:

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that

the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 2332. (Ellipses and brackets in text.)

Neither the warrant nor the search was invalid.

7. Owens urges as error the denial of his motion for severance, based upon an alleged *Bruton* violation by allowing the testimony that the Davises had given a statement, then not allowing him to confront the Davises, who did not testify. Because the statements were not introduced in evidence, there was no error.

8. (a) Owens contends that a new trial was required by the state's withholding from him exculpatory evidence of a $1,000 payment made by police officers to two state's witnesses who gave testimony crucial to the state's case. He argues that this alleged *Brady* violation was material because one of the witnesses (Blackwell) was the only one to corroborate the accomplice's testimony as to Owens' guilt of the felony-murder charge.

(b) In *Ross v. State*, 254 Ga. 22, 30 (4c) (326 SE2d 194) (1985), we stated:

> *Brady* itself does not require the pre-trial disclosure of exculpatory evidence and is not violated when the evidence is presented to the jury at trial. *Castell v. State*, 250 Ga. 776 (2b) (301 SE2d 234) (1983).

Here, the exculpatory evidence was presented to the jury at trial, and Owens had the opportunity to cross-examine the witnesses. The issues of the credibility and impeachment of the witnesses were for the jury. A new trial was not required.

9. (a) Owens argues that the evidence did not support the verdict as to aggravated assault and felony murder. He contends that the only witness to the underlying felony was Trabish, whose testimony was corroborated by Blackwell. Blackwell, in turn, had multiple felony convictions; was affected by use of marijuana at the time of the homicide; was paid by police to furnish information, and gave evidence that impeached Trabish's testimony and contradicted his own prior statement.

(b) There was other corroborating testimony. Issues of credibility and impeachment were for the jury. The evidence authorized a rational trier of fact to find Owens guilty of aggravated assault and felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

10. Owens contends that a mistrial was required by the admission of the hearsay testimony of the witness, Tim Drake, as to what the victim had said that he heard someone else to say. In denying the motion for mistrial, the trial court observed that the testimony was

inadmissible, and that unless it was connected to the conspiracy, mistrial would be declared. No curative instruction was given. The state did not inquire further into the hearsay testimony. The trial judge denied the renewed motion for mistrial on the ground that the testimony was admissible pursuant to an overall conspiracy to distribute marijuana. The evidence supports this holding. The failure to grant a mistrial does not require a new trial.

11. (a) Owens argues that the trial court erred in denying his motion to suppress evidence that was seized under a warrant issued to search his home in Murray County. The warrant was obtained and executed by a police officer from Whitfield County. He relies upon *Coker v. State*, 14 Ga. App. 606 (1) (81 SE 818) (1914); *Hill v. State*, 193 Ga. App. 280 (387 SE2d 582) (1989); Op. Att'y Gen. 1958-59, p. 73; and Art. IX, Sec. II, Par. III (b) (2), Constitution of Georgia of 1983.

(b) In *Bruce v. State*, 183 Ga. App. 653 (359 SE2d 736) (1987), it was held:

> OCGA §§ 17-5-20 and 17-5-21 provide that any officer of this state or its political subdivisions charged with the duty of enforcing the criminal laws may apply for a search warrant. OCGA § 17-5-24 also provides that "[t]he search warrant ... shall be directed for execution to all peace officers of this state." Accordingly, the City of Atlanta police officer/Fulton County deputy sheriff in this case was authorized to apply for and execute the search warrant in Clayton County. [Cit.]

The denial of the motion to suppress was not error.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 1, 1991.

*Waycaster, Corn, Murray & Morris, Marcus R. Morris, Cynthia N. Johnson,* for appellant (case no. S91A0685).

*Minor, Bell & Neal, Rickie L. Brown,* for appellant (case no. S91A0686).

*McCamy, Phillips, Tuggle, Rollins & Fordham, Stephen A. Williams,* for appellant (case no. S91A0687).

*Jack O. Partain III, District Attorney, Kermit N. McManus, Assistant District Attorney, Michael J. Bowers, Attorney General, C. A. Benjamin Woolf,* for appellee.