**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 10, 2018**

# In the Court of Appeals of Georgia

A18A1263. THE STATE v. ECHOLS.

MCMILLIAN, Judge.

The State appeals the trial court's order dismissing the accusation against Kingsley Echols based on an alleged *Brady*[1] violation, arguing that no *Brady* violation existed and the pre-trial dismissal was improper. For the following reasons, we agree and reverse.

The record shows that Echols was charged in Fulton County with two misdemeanor counts of family violence simple battery under OCGA § 16-5-23 (f). These charges stemmed from an alleged altercation between Echols and his grandmother and his girlfriend. The grandmother called the police, and an officer created an incident report which included a narrative of his conversation with the victims when he responded to the call. According to the incident report, Echols' grandmother called 911 to report Echols attacking both his girlfriend and her. The

---

[1] *Brady v. Maryland*, 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

report stated that the grandmother said that Echols pushed his girlfriend to the ground; that she attempted to pull Echols off his girlfriend; and that Echols subsequently punched and pushed the grandmother. Also in the report were statements from Echols' girlfriend that Echols did not hit his grandmother and instead only put his hands up to keep his grandmother away. The incident report noted that both victims had completed written witness statements relating to the incident.

In April 2017, Echols filed a motion requesting discovery of, among other things,

> [a]ny and all materials now known to the State, or materials that may become known, or materials that through due diligence may be learned of from investigating officers or witnesses or persons having knowledge of said case, that is exculpatory in nature, or favorable to the accused, or that may lead to exculpatory or favorable material . . . .

In response, the State provided Echols with several items requested in his motion but asserted that no exculpatory statements were known to exist at that time.

On September 14, 2017, when the case was called for trial, Echols' counsel informed the trial court that he had just spoken with Echols' girlfriend and she told him that the summary of her statement in the incident report was inconsistent with what she had recounted in her written report. The trial court briefly recessed, allowing the State

time to locate the written statements. The State, however, was unable to find the written statements, did not know the statements' location, and requested a continuance so the officers involved with the case could determine if the statements were located in their files. Echols objected to a continuance and moved for the accusation to be dismissed, arguing that the State's failure to provide the written statements constituted a *Brady* violation. The trial court agreed and dismissed the accusation, reasoning that the State had an obligation to provide the victims' written statements and that the statements were "possibly exculpatory, that it is different than what the police stated in the police report."

After the trial court issued a written order dismissing the accusation, the State moved for reconsideration and attached the written statements that were the subject of the alleged *Brady* violation. Before the trial court could rule on the State's motion for reconsideration, however, the State filed this timely appeal under OCGA § 5-7-1 (a) (1).

To prevail on a *Brady* claim, a defendant must show

(1) the State, including any part of the prosecution team, possessed evidence favorable to the defendant; (2) the defendant did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) a reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed to the defense.

3

*State v. James,* 292 Ga. 440, 441 (2) (738 SE2d 601) (2013). See *Heidt v. State*, 292

Ga. 343, 350 (7) (736 SE2d 384) (2013); *Zant v. Moon*, 264 Ga. 93, 100 (3) (440 SE2d

657) (1994).

Under *Brady*, the State has two relevant duties regarding what information it

must provide to a defendant.[2] See *United States v. Agurs*, 427 U.S. 97 (96 SCt 2392,

49 LE2d 342) (1976). First, the State must disclose material information upon a pretrial

request for specific evidence. See id. at 106 (II). Second, the State must provide

obviously exculpatory evidence, regardless of whether defense counsel requested the

evidence or not. Here, we will assume that the State had a duty to provide Echols with

the girlfriend's statement,[3] which contained the favorable detail that the grandmother

---

[2] We note that the State had no obligation to disclose the victims' written statements under the applicable misdemeanor discovery statutes, which require only that the State provide the defendant a copy of the indictment; a list of witnesses whose testimony supported the indictment; a copy of any statement that the defendant gave while in custody, if requested; and any scientific reports the prosecution would introduce at trial. See OCGA §§ 17-16-20 to 17-16-23; compare OCGA § 17-16-7 (requiring State to provide witness statements in felony cases).

[3] Although the written statements were apparently in the custody of police, "[a] prosecutor is presumed to have knowledge of all information gathered in connection with his or her office's investigation of the case and has a duty to learn of favorable evidence known to others acting on the government's behalf[.]" *State v. James*, 292 Ga. at 442 (2), n.4.

4

hit Echols when she came into the room and kept hitting him until the grandmother called police.

However, that does not end our analysis. Our appellate courts have repeatedly held that "*Brady* . . . is not violated when the material in question is available to the defendants during trial, pre-trial disclosure of material not being required." *Burgan v. State*, 258 Ga. 512, 513 (I) (1) (371 SE2d 854) (1988).[4] In that situation, "[a]ppellant must show that earlier disclosure would have benefitted the defense and that the delayed disclosure deprived him of a fair trial." *Dennard v. State*, 263 Ga. 453, 454 (4) (435 SE2d 26) (1993), overruled on other grounds, *Sanders v. State*, 281 Ga. 36, 37 (1) (635 SE2d 772) (2006). As our Supreme Court explained in the recent case of *In the Matter of Lee*, 301 Ga. 74, 78 (799 SE2d 766) (2017),

> [w]hether a disclosure at trial is timely enough to satisfy *Brady* depends
> on the extent to which the delay in disclosing the exculpatory evidence

---

[4] See also *Davis v. State*, 261 Ga. 382, 385 (8) (b) (405 SE2d 648) (1991) ("*Brady* itself does not require pre-trial disclosure of exculpatory evidence and is not violated when the evidence is presented to the jury at trial.") (citation omitted); *Castell v. State*, 250 Ga. 776, 781 (2) (b) (301 SE2d 234) (1983) (*Brady* is not violated when the exculpatory information is made available to a defendant immediately before or during trial); *Wallin v. State*, 248 Ga. 29, 33 (6) (279 SE2d 687) (1981) ("[g]enerally, [a] complaint under *Brady* arises when the defendant discovers *after* trial that exculpatory information, known to the prosecution but unknown to the defendant, existed prior to or arose during the trial.").

5

deprived the defense of a meaningful opportunity to cross-examine the pertinent witness at trial, whether earlier disclosure would have benefitted the defense, and whether the delay deprived the accused of a fair trial or materially prejudiced the defense.

Id. at 78. See also *Jones v. State*, 292 Ga. 593, 596 (3) (740 SE2d 147) (2013) (*Brady* not violated when recording of interview produced at trial before witnesses testified and defendant did not show that earlier production would have benefitted his defense and that delay deprived him of a fair trial); *Burgan*, 258 Ga. at 513-14 (I) (1) (*Brady* not violated where witness was extensively cross-examined about prior inconsistencies, earlier disclosure would not have benefitted the defense, and the delay did not deprive him of a fair trial or materially prejudice his defense); *Gresham v. State*, 265 Ga. 730, 730 (1) (462 SE2d 370) (1995) (mere speculation that defendant might have pursued a different course of action if he had received the evidence earlier).

Here, Echols found out about the discrepancy between the incident report and the statement when he talked to the girlfriend immediately before trial, and his counsel promptly requested the statement. Although the State could not produce the statement in the brief recess in the proceedings, the failure to produce the statement at that time did not constitute a *Brady* violation because the State could have produced the statement during the course of the trial or testimony could have been elicited at trial

about the discrepancies between the statement and the incident report. Accordingly, it was premature to determine at that time that a reasonable probability exists that the outcome of the trial would have been different had the statement been produced. *State v. James*, 292 Ga. at 441-42 (2) (to prevail on a *Brady* claim defendant must show "a reasonable probability exists the outcome of the trial would have been different had the evidence been disclosed to the defense"). Thus, the trial court erred in determining that there was a *Brady* violation.

That leaves the question of whether the trial court had the authority to dismiss the case when prior to trial it was alleged that the State was withholding potential exculpatory evidence, even if it was not a *Brady* violation at that time.[5] Echols has not cited, nor have we discovered, any authority permitting the trial court to dismiss a criminal prosecution before trial based solely on the allegation that the State has committed a *Brady* violation. However, a criminal prosecution may be dismissed before trial based on the State's failure to preserve potentially exculpatory evidence if the defendant shows that the evidence is constitutionally material and the State is found

_____

[5] We note that the trial court could have granted a continuance to allow the State to search for the evidence and would have been well within its discretion to do so. *Mathis v. State*, 299 Ga. App. 831, 838 (1) (e) (684 SE2d 6) (2009) ("It is well settled that a motion for continuance is addressed to the sound discretion of the trial judge[.]") (punctuation and citation omitted).

7

to have acted in bad faith. *State v. Miller*, 287 Ga. 748, 754 (699 SE2d 316) (2010); *State v. Cain*, 345 Ga. App. 904, 905-06 (815 SE2d 216) (2018); *Doyal v. State,* 287 Ga. App. 667, 671 (6) (653 SE2d 52) (2007). To be constitutionally material, "the evidence must possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (Citation omitted.) *Krause v. State*, 286 Ga. 745, 752 (8) (691 SE2d 211) (2010).

Although the trial court noted that the written statements may have been lost or destroyed by the State, it does not appear from the record that the defendant argued, or that the trial court considered, whether the State acted in bad faith in failing to provide the statements or whether the statements were constitutionally material. Because the trial court erred in finding a *Brady* violation and in dismissing the case for the failure to produce the statements without considering the relevant factors, the trial court's order dismissing the case with prejudice must be reversed and the case remanded for further proceedings.

*Judgment reversed and case remanded. Barnes, P. J., and Reese, J., concur*.