**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 23, 2025**

# In the Court of Appeals of Georgia

A25A0727. HOLMES v. THE STATE.

HODGES, Judge.

Following a jury trial, the Superior Court of Walker County entered a judgment of conviction against Christopher Holmes on two counts of aggravated child molestation (OCGA § 16-6-4 (c) (2009)) and one count each of statutory rape (OCGA § 16-6-3 (a) (2006)), child molestation (OCGA § 16-6-4 (a) (2009)), and sexual exploitation of children (OCGA § 16-12-100 (b) (2013)).[1] The trial court denied Holmes' motion for new trial as amended, and Holmes appeals, arguing that: (1) the State impermissibly withheld exculpatory evidence, and the trial court erred in

---

[1] The jury acquitted Holmes of one additional count each of aggravated child molestation and aggravated sexual battery. In addition, the State disposed of three additional counts of child molestation by nolle prosequi.

denying his motion for new trial based upon the failure to disclose exculpatory evidence; (2) he received ineffective assistance of trial counsel in multiple respects; and (3) he should have received split sentences on his convictions for child molestation and statutory rape. With the exception of the trial court's failure to sentence Holmes to split sentences on Counts 4 (statutory rape) and 5 (child molestation), we find no error. Therefore, we affirm in part and vacate in part, and we remand this case for resentencing in a manner consistent with former OCGA § 17-10-6.2. See, e.g., *Brown v. State*, 345 Ga. App. 622, 623, n. 3 (814 SE2d 738) (2018).

Viewed in a light most favorable to the verdict,[2] the evidence adduced at trial revealed that G. N. lived with his father at the Happy Valley Apartments in Rossville, Walker County, between 2007 and late 2012. At some point in 2010 or 2011, when he was 10 or 11 years old, G. N. was introduced to Holmes, a resident living in the same apartment building at Happy Valley. Shortly thereafter, G. N. began to visit Holmes' apartment to watch television and to talk with Holmes about computers. Even after G. N. moved from Happy Valley in late 2012, he would continue to visit Holmes' apartment.

---

[2] See, e.g., *Mangham v. State*, 291 Ga. App. 696 (662 SE2d 789) (2008).

In late 2013 or early 2014, G. N.'s normal conversations with Holmes turned sexual, as Holmes steered their conversations toward pornography. Holmes also began showing pornography to G. N., including child pornography from the "deep web." During that time, 13-year-old G. N. and 12-year-old R. B. were in a dating relationship, and Holmes began to question G. N. about whether he was sexually active with R. B. Holmes also masturbated in front of G. N. as the two viewed pornography. Ultimately, Holmes asked G. N. if he wanted to have sex with his wife, Tiffany, which culminated in G. N. engaging in sexual intercourse with Tiffany as Holmes watched and, later, participating in a "three-way" with Holmes and Tiffany.[3] At some point in 2014, Holmes also performed oral sex on G. N.[4]

Also in late 2013 or early 2014, G. N. introduced Holmes to R. B. when her father came to pick up G. N. from Holmes' apartment. Within a few months of

[3] At the time of trial, Tiffany Holmes was serving a 10-year prison sentence, to be followed by 30 years' probation, for the statutory rape of three teenage boys, including G. N.

[4] G. N. also revealed that Holmes told him he would perform oral sex on his then-infant daughter and insert his finger in his daughter's vagina. The State did not indict Holmes for any potential offenses against his daughter, but the trial court admitted similar testimony concerning Holmes' daughter from Tiffany Holmes as other acts evidence and gave the jury a limiting instruction. See OCGA §§ 24-4-413, 24-4-414.

initially meeting him, R. B. saw Holmes on at least two occasions. One such encounter occurred at a Dollar Store after Holmes, who was 27 at the time, and 14-year-old R. B. had been communicating by Messenger and Skype for approximately one month. At the Dollar Store, where Holmes, Tiffany, and their infant daughter were shopping, R. B. "just went up to [Holmes] and kissed him[.]" After that, the conversations between Holmes and R. B. turned sexual, as R. B. acknowledged that she "usually [brought] it up." Holmes purported to be a minister in the Church of the Flying Spaghetti Monster, which gave him the authority to marry people, and Holmes and R. B. were symbolically married in the church a "[f]ew months after [they] had started talking."

A few weeks after the Dollar Store encounter, R. B. began going to Holmes' apartment every day after school. Although she told her parents that her visits were to see Holmes' daughter, she spent most of her time watching television and talking to Holmes while Tiffany and Holmes' daughter were in another room.[5] Holmes and

[5] Richard "Tripp" Stamey, a friend of Tiffany Holmes', walked in on R. B. and Holmes in Holmes' bedroom at one point. R. B. was lying nude on the bed, while Holmes was clothed only in boxer shorts. Stamey, who had previously been convicted of sexual battery offenses, warned Holmes "to just leave [R. B.] alone[;]" Holmes responded that he was "too smart" to get caught. Later, Holmes and Stamey were cellmates at the Walker County Jail after each was arrested on unrelated sexual

R. B. would retreat to Holmes' bedroom to watch television, but they would soon begin kissing, and their conduct eventually escalated to include multiple occasions of oral and vaginal sexual intercourse.[6] R. B. also began sending nude photographs of herself to Holmes by text message. Tiffany uncovered their conduct when she entered the bedroom and found both Holmes and R. B. nude.

G. N. continued to visit Holmes' apartment. During these visits, Holmes showed G. N. multiple nude photographs of R. B. on his cell phone. Holmes also showed G. N. videos of Holmes and R. B. engaging in sexual intercourse.

On May 18, 2014, a Rossville police officer responded to a sexual assault report at the Happy Valley Apartments. When he arrived, the officer met with the complaining party and with Holmes' wife, Tiffany, who responded to each of the officer's questions with, "I don't know anything." Based upon their statements, the officer began looking for Holmes and found Holmes and R. B. standing outside Holmes' apartment building. After speaking with R. B., the officer approached

_____

offenses against children.

[6] At trial, R. B. denied any acts of anal intercourse with Holmes. However, she told a Rossville detective during a forensic interview that the two had engaged in anal intercourse.

Holmes and told him that he had received a complaint that Holmes had been showing sexually explicit photographs to minors in the apartment community. The officer asked Holmes to see his phone; Holmes agreed, entered a security code, opened a folder on the phone, and handed the phone to the officer. The officer began scrolling through Holmes' photographs and found one photo depicting R. B. nude from the waist up and two photos of R. B. totally nude. At that point, the officer arrested Holmes. A search warrant executed for Holmes' phone revealed a diary of his sexual activities with R. B.[7] as well as multiple photographs depicting R. B. "in various stages of nudity[.]"[8]

For his crimes against R. B. and G. N., a Walker County jury indicted Holmes for four counts of child molestation, three counts of aggravated child molestation, and one count each of aggravated sexual battery, statutory rape, and sexual exploitation of children. A jury returned guilty verdicts against Holmes on two counts of aggravated child molestation and one count each of statutory rape, child molestation, and sexual

---

[7] In the most innocuous of his diary entries, Holmes wrote, "March 18 at 7:18 PM I finally french kissed [R. B.]."

[8] Holmes does not contest the sufficiency of the evidence.

exploitation of children,[9] and the trial court sentenced Holmes to a total aggregate of two consecutive life terms plus 40 years. The trial court denied Holmes' motion for new trial as amended, and this appeal followed.

1. In two related enumerations of error, Holmes contends that the State impermissibly withheld evidence that the GBI's "Cellebrite" investigation of his cell phone did not uncover the nude photographs of the victim that local law enforcement officers saw during their initial search. Holmes further argues that it was plain error and an abuse of discretion for the trial court to deny his motion for new trial on the State's failure to disclose the exculpatory evidence. We disagree.

Under Georgia law, it is well settled that "[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U. S. 83, 87 (83 SCt 1194, 10 LE2d 215) (1963)." (Punctuation omitted.) *Danforth v. Chapman*, 297 Ga. 29 (2) (771 SE2d 886) (2015).

---

[9] As we have noted, three counts of child molestation were disposed of by order of nolle prosequi, and the jury acquitted Holmes of one count each of aggravated child molestation (for performing oral sex on G. N.) and aggravated sexual battery (for allegedly inserting his finger in R. B.'s vagina). See n. 1, supra.

To prevail on a *Brady* claim, a defendant must show[:] (1) the State, including any part of the prosecution team, possessed evidence favorable to the defendant; (2) the defendant did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) a reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed to the defense.

(Citation omitted.) *State v. Echols*, 347 Ga. App. 278, 279 (819 SE2d 72) (2018). We review a trial court's factual findings on a *Brady* claim under the clearly erroneous standard, while we review the court's application of the law to the facts de novo. See *Hood v. State*, 311 Ga. 855, 863 (1) (860 SE2d 432) (2021).

At trial, two local law enforcement officers testified that they each observed nude photographs of the victim on Holmes' cell phone. In his motion for new trial, Holmes alleged that an extraction of data from Holmes' cell phone by the GBI using Cellebrite[10] software did not reveal any nude photographs of the victim, and that local

---

[10] Cellebrite has been described as

a third-party Israeli digital intelligence company (Cellebrite Mobile Synchronization, Ltd) that develops digital intelligence platforms. Law enforcement agencies use the company's Universal Forensic Extraction Device (UFED) tool to download data from cellular telephones and to

officers withheld the extraction results from Holmes. During Holmes' motion for new trial hearing, the lead prosecuting attorney testified that she was not aware of the Cellebrite extraction at the time of trial and did not know when the extraction was performed, but learned of the extraction in connection with Holmes' motion for new trial. Both the lead prosecuting attorney and a GBI agent testified that the Cellebrite software does not always show all of the data contained on a cell phone.[11] In its order denying Holmes' motion for new trial, the trial court concluded that

> the Cellebrite evidence at issue was not willfully withheld but inadvertently not provided by the Government to the Defendant[,] . . . the evidence in question being withheld did not prejudice this Defendant[,] . . . a reasonable probability does not exist that the outcome of the trial would have been different because multiple witnesses corroborated the existence of the photographic evidence testified to by the law enforcement witnesses and those witnesses testified subject to

> organize that data so it can be reviewed. Cellebrite is ordinarily used as a software program, which can be installed onto a law enforcement computer. Cellebrite, however, also has devices that can be utilized without a computer.

*United States v. Smith*, 2022 U. S. Dist. LEXIS 227200, at *4 - *5 (S. D. Ill. 2022).

[11] Neither of the local officers nor the GBI agent who performed the extraction testified at Holmes' motion for new trial hearing.

cross examination[,] and evidence presented at the Motion for New trial explained issues with Cellebrite.

Pretermitting whether local law enforcement officers had the results of the GBI's Cellebrite extraction at the time of Holmes' trial and that they failed to disclose that information to the prosecuting attorney, Holmes has not shown that the State actively suppressed the extraction or that "a reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed to the defense." (Citation omitted.) *Echols*, 347 Ga. App. at 279; see also *Anthony v. State*, 302 Ga. 546, 552 (III) (B) (807 SE2d 891) (2017). Critically, the officers' testimony that they observed the nude photographs on Holmes' phone was corroborated by at least one witness who likewise saw the same or similar photos on Holmes' phone. Moreover, the victim herself testified that she sent multiple nude photographs of herself to Holmes by text message. Accordingly, we conclude that Holmes has failed to demonstrate a *Brady* violation. It follows that the trial court did not err in denying Holmes' motion for new trial on these grounds.

2. Next, Holmes asserts that he received ineffective assistance of trial counsel for a variety of reasons, including counsel's failure to: (a) challenge execution of

search warrants that were never filed with the Walker County Magistrate Court clerk; (b) move to suppress evidence obtained from Holmes' cell phone because the search warrant for the phone was illegally executed; (c) object to child hearsay when the evidence was not offered through the testimony of the person to whom the child's statement was made; and (d) object to the State's questioning about Holmes' affiliation with the Church of the Flying Spaghetti Monster. We are unpersuaded.

To support his claim that he received ineffective assistance of counsel, Holmes must prove

> both that counsel's performance was professionally deficient and that he was prejudiced by the deficient performance. To prove deficient performance, [Holmes] must show that his counsel performed in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. To prove prejudice, [Holmes] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This burden is a heavy one. And if [Holmes] fails to show either deficiency or prejudice, this Court need not examine the other prong of the *Strickland v. Washington*, 466 U. S. 668, 687 (III), 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984) test.

11

(Citation and punctuation omitted.) *Gainey v. State*, 364 Ga. App. 75, 76 (1) (874 SE2d 121) (2022).

> In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this [C]ourt upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo. We thus review de novo the trial court's legal conclusion that counsel was not ineffective.

(Citations and punctuation omitted.) *Pye v. State*, 322 Ga. App. 125, 131 (3) (742 SE2d 770) (2013).

(a) *Search Warrants.* In two related enumerations, Holmes first argues that trial counsel performed deficiently by failing to move to suppress evidence obtained from the execution of two search warrants (including one warrant for his cell phone), the returns for which, he claims, were never filed with the Walker County Magistrate Court clerk. Similarly, Holmes contends that he received ineffective assistance because trial counsel failed to move to suppress evidence taken from his phone "on the basis that the warrant was illegally executed." (Punctuation omitted.) We disagree.

Georgia law states that

[w]hen [an] ineffective assistance of counsel claim is based on failure to file a motion [to suppress], the defendant must make a *strong showing* that the evidence would have been suppressed had a motion to suppress been filed. Indeed, counsel's failure to make a motion which will not succeed cannot provide a basis for finding ineffective assistance of counsel.

(Citations and punctuation omitted; emphasis supplied.) *Dent v. State*, 303 Ga. 110, 118 (4) (a) (810 SE2d 527) (2018); see also *Ferguson v. State*, 354 Ga. App. 867, 868 (2) (842 SE2d 77) (2020) (noting that if a defendant fails to make a strong showing that evidence would have been suppressed, "he has failed to establish deficient performance by his trial counsel") (citation and punctuation omitted). In this case, then, "[b]ecause the contested evidence was obtained during the execution of a search warrant, to prevail on a motion to suppress trial counsel would have been required to show that the warrant was not valid." *Ferguson*, 354 Ga. App. at 868 (2). This, Holmes has not shown.

The search warrants about which Holmes complains were issued on May 20, 2014. Although Holmes asked trial counsel and the prosecuting attorney about the warrants in general terms during the hearing on his motion for new trial, including asking trial counsel whether he was "aware that [the] search warrant was not executed

13

within [the required] ten-day period[,]" Holmes has not cited to any part of the record actually identifying when the warrants were executed — the hook upon which his argument hangs. See Court of Appeals Rule 25 (d) (1) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration."). As a result, we cannot say whether trial counsel rendered deficient performance arising from the failure to file a motion to suppress the search warrants.

But even if we assume, without deciding, that trial counsel was deficient in failing to file a motion to suppress the search warrants,[12] Holmes has argued only "in . . . conclusory terms[] that he was prejudiced by his attorney's failure to attempt to suppress the evidence obtained under the search warrant[.]" (Footnote omitted.) *Dent*, 303 Ga. at 117-118 (4) (a). Moreover, the record confirms that Holmes was not

---

[12] See OCGA §§ 17-5-25 ("The search warrant shall be executed within ten days from the time of issuance. . . . Any search warrant not executed within ten days from the time of issuance shall be void and shall be returned to the court of the judicial officer issuing the same as 'not executed.'"), 17-5-31 ("No search warrant shall be quashed or evidence suppressed because of a technical irregularity not affecting the substantial rights of the accused."); see also *Bolt v. State*, 230 Ga. App. 760, 761-762 (1) (497 SE2d 406) (1998) (holding that loss of, and failure to file, affidavit in support of search warrant following issuance of warrant was "a technical irregularity not affecting [defendant's] substantial rights").

prejudiced by the failure to file a motion to suppress, as multiple witnesses provided testimony concerning the nude photographs at issue, as well as Holmes' actions. For example, R. B. confirmed that she sent nude photographs of herself to Holmes. A Rossville police officer confirmed that he saw R. B.'s nude photographs on Holmes' phone after receiving Holmes' consent. And G. N. stated that he saw nude photographs and videos of R. B. on Holmes' phone. Finally, the fact that Holmes was acquitted of two of the seven charges he faced "strongly supports the conclusion that the assistance actually rendered by [his] trial counsel fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render." (Citation and punctuation omitted.) *Tyner v. State*, 313 Ga. App. 557, 563-564 (6) (722 SE2d 177) (2012). Under these circumstances, we conclude that Holmes has failed to demonstrate that he was prejudiced by trial counsel's failure to file a motion to suppress based upon alleged errors in executing the two search warrants. As a result, Holmes' claim of ineffective assistance of trial counsel on that basis fails.

(b) *Child Hearsay*. Holmes appears to argue that trial counsel should have objected to the introduction of a recording of Holmes' daughter's forensic interview

15

on child hearsay grounds, because the forensic interviewer did not testify at trial. We conclude that Holmes has failed to demonstrate deficiency or prejudice.

At trial, the State presented Holmes' seven-year-old daughter[13] as an other acts witness to testify to an act of aggravated child molestation Holmes committed against her. She also testified that she spoke with someone at the Children's Advocacy Center about the incident. Later, during the testimony of the State's prosecuting investigator, the State tendered Exhibit 18, a recording of the forensic interview of Holmes' daughter. Although the prosecuting investigator was present and observed the interview, he did not participate in questioning Holmes' daughter. Holmes objected to admitting the recording into evidence on foundational grounds, but acknowledged that he had informed the State he would not object to the forensic interviewer's absence. The trial court admitted the recording into evidence over Holmes' objection. At Holmes' motion for new trial hearing, trial counsel's only meaningful recollection

---

[13] For clarity, the reference to "Holmes' seven-year-old daughter" is the same child Holmes was accused of abusing when she was an infant. See n. 4, supra.

was that he had a sufficient opportunity to cross-examine the child and other witnesses relative to the child's statements during her forensic interview.[14]

At the time of Holmes' trial in 2014,[15] OCGA § 24-8-820 provided that

[a] statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to whom made if the proponent of such statement provides notice to the adverse party prior to trial of the intention to use such out-of-court statement and such child testifies at the trial, unless the adverse party forfeits or waives such child's testimony as provided in this title, and, at the time of the testimony regarding the out-of-court statements, the person to whom the child made such statement is subject to cross-examination regarding the out-of-court statements.

---

[14] Despite Holmes' repeated questioning of trial counsel, in which he essentially asked trial counsel to admit that he was ineffective, whether counsel rendered ineffective assistance is a legal conclusion for the trial court, not for appellate or trial counsel. See generally *Pye*, 322 Ga. App. at 131 (3) ("We . . . review de novo the trial court's legal conclusion that counsel was not ineffective.") (citation and punctuation omitted). Indeed, although it did not happen in this case, we have cautioned counsel to refrain from "emphatically and even eagerly testifying to one's own incompetence or misconduct. . . ." *Nejad v. State*, 296 Ga. App. 163, 170 (674 SE2d 60) (2009) (Smith, P. J., concurring specially), reversed by *State v. Nejad*, 286 Ga. 695 (690 SE2d 846) (2010).

[15] The current version of OCGA § 24-8-820 (a) applies "to any motion made or hearing or trial commenced on or after April 18, 2019." OCGA § 24-8-820 (b).

17

Here, the State provided notice of its intent to introduce child hearsay statements by Holmes' daughter to a forensic interviewer, and Holmes' daughter testified at trial, thus satisfying two of the three requirements to admit child hearsay under OCGA § 24-8-820. See, e.g., *Cornell v. State*, 349 Ga. App. 883, 884 (2) (827 SE2d 63) (2019) (holding requirements of OCGA § 24-8-820 satisfied where "state provided notice of its intent to use the victim's out-of-court statements, the victim testified at trial, and the persons to whom the victim made the statements were subject to cross-examination at trial"). However, the forensic interviewer to whom Holmes' daughter made her statements did not testify at trial and was therefore unavailable for cross-examination. On that point, the record demonstrates that trial counsel indicated that he informed the State that he would not object to the forensic interviewer's absence, thereby waiving his right to cross-examine her. As a result, any objection as to the admissibility of Holmes' daughter's statements to the forensic interviewer based upon OCGA § 24-8-820 would have been meritless. See generally *Harvard v. State*, 365 Ga. App. 209, 214 (2) (b) (i) (877 SE2d 869) (2022) ("Counsel's failure to make a meritless hearsay objection cannot be evidence of ineffective assistance of counsel.") (citation and punctuation omitted). Thus, Holmes has not shown that his

18

counsel performed deficiently in failing to object to the admission of Exhibit 18 pursuant to OCGA § 24-8-820.

Moreover, the evidence was cumulative of Holmes' daughter's testimony at trial. See *Ventura v. State*, 346 Ga. App. 309, 313 (4) (816 SE2d 151) (2018). We therefore conclude that Holmes has also failed to demonstrate that he was prejudiced by trial counsel's failure to object to Exhibit 18. Id.

(c) *Church of the Flying Spaghetti Monster*.[16] Holmes next asserts that trial counsel performed deficiently by failing to object to evidence that Holmes was affiliated with the Church of the Flying Spaghetti Monster, through which Holmes symbolically married R. B., and that trial counsel compounded the error by addressing Holmes' affiliation on cross-examination. In view of the evidence we have outlined in Division 2 (a), supra, as well as Holmes' mere conclusory statement that he was prejudiced by his attorney's failure to object to any questions concerning Holmes' affiliation with the church, we conclude that Holmes has again failed to show that he

---

[16] For a comprehensive review of the Church of the Flying Spaghetti Monster and its roots and belief system, the adherents of which are referred to as "Pastafarians," see *Cavanaugh v. Bartelt*, 178 FSupp.3d 819, 824-827 (I) (1) (D. Neb. 2016).

was prejudiced by the evidence.[17] See *Dent*, 303 Ga. at 117-118 (4) (a). It follows that his claim for ineffective assistance of trial counsel on this ground is without merit.

In sum, to demonstrate prejudice, Holmes was required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citation omitted.) *Gainey*, 364 Ga. App. at 76 (1). As to each allegation of ineffective assistance he raised, Holmes failed to satisfy this heavy burden. See id. Accordingly, we conclude that Holmes has not proven his claims of ineffective assistance of trial counsel, and we therefore affirm the trial court's order denying his motion for new trial as to those claims.

3. Finally, Holmes contends that the trial court erred in sentencing him solely to confinement on Counts 4 (statutory rape) and 5 (child molestation) rather than imposing split sentences.[18] See OCGA § 17-10-6.2. On this point, we agree.

---

[17] Moreover, unlike the impermissible evidence of a "gothic lifestyle" in *Boring v. State*, 289 Ga. 429, 432-435 (2) (711 SE2d 634) (2011) which Holmes cited, the evidence of Holmes' affiliation in this case was relevant to demonstrate the scope of his relationship with R. B.

[18] In its appellee's brief, the State conceded that the trial court erred in neglecting to impose a split sentence on Counts 4 and 5.

OCGA § 16-6-3 (b) (2006) provides that "a person convicted of the offense of statutory rape shall be punished by imprisonment for not less than one nor more than 20 years[.] . . . Any person convicted under this subsection of the offense of statutory rape shall, in addition, be subject to the sentencing and punishment provisions of Code Section 17-10-6.2." Similarly, OCGA § 16-6-4 (b) (1) (2009) states that "a person convicted of a first offense of child molestation shall be punished by imprisonment for not less than five nor more than 20 years and shall be subject to the sentencing and punishment provisions of Code Sections 17-10-6.2 and 17-10-7." With exceptions not relevant to this case, OCGA § 17-10-6.2 (b) (2013) provides that

> any person convicted of a sexual offense shall be sentenced to a split sentence which shall include the minimum term of imprisonment specified in the Code section applicable to such sexual offense. No portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the court. Any such sentence shall include, in addition to the mandatory term of imprisonment, an additional probated sentence of at least one year; provided, however, that when a court imposes consecutive sentences for sexual offenses, the requirement that the court impose a probated sentence of at least one year shall only apply to the final consecutive sentence imposed.

"As a result, the General Assembly has mandated that in cases in which a defendant is convicted of a 'sexual offense,' the trial court *must* include a term of probation in its sentence except in certain circumstances." (Citations and punctuation omitted; emphasis supplied.) *Watkins v. State*, 336 Ga. App. 145, 152 (5) (784 SE2d 11) (2016).

The term "sexual offense" includes both child molestation and statutory rape for purposes of the statute. See OCGA § 17-10-6.2 (a) (4), (5). During sentencing, the trial court sentenced Holmes to "20 Years to serve" on Count 4 (statutory rape) and "20 Years to serve" on Count 5 (child molestation) concurrent with Count 4; Holmes' sentences on Counts 4 and 5 were set to run consecutively to his sentence on Count 2 (aggravated child molestation). "OCGA § 17-10-6.2 authorizes [a] trial court to issue a split sentence that includes at least five years of imprisonment and at least one year of probation, for a total of no more than twenty years." (Citation and punctuation omitted.) *Watkins*, 336 Ga. App. at 152 (5). Therefore, because the trial court failed to impose a split sentence as to Counts 4 (statutory rape) and 5 (child molestation), we vacate Holmes' sentences on Counts 4 and 5 and remand this case

for resentencing in a manner consistent with OCGA §§ 16-6-3 (b), 16-6-4 (b) (1), and 17-10-6.2.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing.* McFadden, P. J., and Pipkin, J., concur.